## MOSKOWITZ v. UNITED STATES.

### No. 10869.

Circuit Court of Appeals, Fifth Circuit.

Oct. 25, 1944.

Paul T. Chance, of Augusta, Ga., amd L. L. Meadors, of LaGrange, Ga., for appellant.

Francis M. Shea, Asst. Atty. Gen., and Wilbur C. Pickett, Asst. Director, Bureau of War Risk Litigation, United States Department of Justice, of Washington, D. C., and M. Neil Andrews, U. S. Atty., of Atlanta, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

---

SIBLEY, Circuit Judge.

The suit was on a converted war risk insurance policy of $5,000, dated July 1, 1927, payable in installments to estate of insured. It was met by a motion to dismiss "for want of jurisdiction upon the ground that the same was not instituted within the time required by law", the facts about the history of the insurance being set forth elaborately. This motion was heard by the judge, and the insurance policy and the proceedings touching the claim in the Veterans' Administration were put in evidence. Some of the documentary evidence indicated an indebtedness against the policy which exceeded the cash surrender value on July 1, 1931, when premium payments ceased.

On this evidence the judge made a written opinion in which he pointed out that the petition as amended in effect contained two counts, one being a claim that the policy had been matured by the total permanent disability of the insured veteran in July, 1931, and the other that the policy matured by the insured's death in February, 1937, within the period of extended insurance provided in the policy. He found that the claim based on total and permanent disability was disallowed by the Director of Veterans' Administration and notice given at a date which made the filing of the suit on June 22, 1942, too late. The judge then adverted to the claim based on death and ruled that if the indebtedness against the policy existed on August 1, 1931, when the policy lapsed by nonpayment of premiums, that claim also would be barred; but he ordered that the petitioner be allowed thirty-one days to controvert the proof offered by the defendant as to the existence of the indebtedness or to show legal ground of its invalidity. No further proof was offered and a final judgment was entered sustaining the motion and dismissing the petition. This appeal followed.

The suit so far as it is based on total permanent disability was barred. The insurance lapsed on August 1, 1931, for nonpayment of the July 1 premium. A claim was filed July 3, 1931, with the Veterans' Administration and was disallowed, and notice given on November 16, 1931. The insured died on February 25, 1937, and thereafter his brother, the beneficiary in another policy, on July 12, 1937, reopened the question of disability and the former decision was reaffirmed, and notice given April 21, 1939. Even if the period of pendency of this latter claim can operate to suspend limitation in favor of the suit on this policy so as to be added to the time of pendency of the original claim, the six year statute of limitation would still bar the suit on this claim, 38 U.S.C.A. § 445. The provision of the Georgia limitation statutes suspending their running for five years while an estate is unrepresented is no part of the federal statute. The federal statute expressly says, "No State or other statute of limitations shall be applicable to suits filed under this section." There was no error in sustaining the motion to dismiss as to the claim based on disability.

The claim based on the maturing of the policy by death stands otherwise. It did not arise until the contingency of death occurred, and this suit was filed within six years thereafter. The trouble with this claim is touching its merits. The facts seem not much in dispute. The insurance lapsed and was reinstated under Section 304 of the World War Veterans' Act, as amended, 38 U.S.C.A. § 515, and the unpaid premiums were charged as an interest bearing indebtedness against the insurance. This indebtedness charged thus against this policy amounted to $439.27 on July 1, 1931, when the final default in payment of premiums occurred. According to the table in the policy of guaranteed cash surrender values and extended insurance, at this date the policy had a cash surrender value of $299.85 which under the policy provisions would purchase extended insurance for 6 years and 320 days, no other option being exercised. If the indebtedness be left out of account, the policy would have been still in force at insured's death, February 25, 1937. The Veterans' Administration, however, in response to inquiry by insured, advised him on July 13, 1934, that since the indebtedness against this policy at its lapse exceeded the cash surrender value there was no extended insurance under it, and on July 23, 1934, advised there was no loan value; but offered to submit figures, on request, for reinstatement. Nothing further was done. The contention now made is that under the law and the terms of the policy, the extended insurance operated notwithstanding the indebtedness against the policy, the indebtedness being carried at interest until the policy matured by death. This seems an unreasonable construction, since the ex-

tended insurance is supposed to be purchased by the cash surrender value, and it would leave the indebtedness to increase while the surrender value which was a security for the indebtedness is exhausted by the extension of the insurance. The construction ought not to prevail unless required by the applicable language.

The policy in paragraph 5 of the Conditions entitled "Cash Surrender and Loan Provisions" provides in subparagraph (a) for payment, on request and on surrender of the policy, of the cash surrender value less any indebtedness. Subparagraph (b) provides, on default in premium and on request and surrender of the policy, for the issuance of a paid-up insurance policy for "such amount * * * as the then cash surrender value will purchase * * *". No mention is made of indebtedness. In subparagraph (c) the words here applicable are: "Upon default in premium and the expiration of the grace period, if the policy has not been surrendered for a cash value or paid-up insurance, this policy shall be automatically extended * * * for such time from the due date of the premium unpaid as the cash surrender value will purchase when applied as a single net premium. * * * If there is no indebtedness, the amount of the monthly installment or amount of insurance payable hereunder shall be the same as may then be payable hereunder * * * and if there is an indebtedness the amount of the monthly installment or amount of insurance payable hereunder shall be reduced in the proportion which the indebtedness bears to the commuted value of the monthly installments payable hereunder excluding dividend accumulations, said commuted value being determined upon the basis of three and one-half per centum per annum". Paragraph 6 of the Conditions relates to indebtedness and provides: "At the maturity of this policy by death or disability, any indebtedness, unless paid off in cash, shall be liquidated by reducing the monthly installment in the proportion which the indebtedness bears to the commuted value of the monthly installments which may then be payable hereunder, excluding dividend accumulations. If the policy shall be payable in one sum at death, any indebtedness shall be deducted from the amount payable under the policy". The quoted provisions of paragraph 6 govern the payment only of indebtedness which exists at the maturity

of the policy. They do not reach the question of what shall be done with an indebtedness in case the policy shall lapse before maturity by nonpayment of premium. Paragraph 5 must be looked to. If the cash surrender value be collected, subparagraph (a) provides that the indebtedness be deducted. This effects a full settlement of the policy and the debt. If paid up insurance is elected, under subparagraph (b), the cash surrender value is applied as a single premium to purchase it. It is not stated whether the net cash surrender value after deducting the indebtedness is meant, or whether the indebtedness is to be carried unpaid until the paid-up insurance matures. That question does not arise in this case. Subsection (c), which applies here, provides for automatic extended insurance for such time as the cash surrender value will purchase, and then follows a table of the times applicable to each policy year. Indebtedness is mentioned, and the provision is not that it shall reduce the available cash surrender value, but that it shall reduce the amount of the insurance to be extended. If there is no indebtedness, the full amount of insurance is extended. If there is an indebtedness, the amount of the insurance is to be reduced by comparing the amount of the debt with the commuted value of the installments; not by comparing the indebtedness with the cash surrender value. We suppose that "commute" the installments at 3½ percent per annum means to discount them, but no one can foretell when they will begin to fall due by maturity of the policy. But if at the lapse it could be ascertained that the commuted value of the installments was, for example, $2,500, the indebtedness being, say $500, is it the meaning that the insurance shall be extended for the full time shown in the table, but reduced in amount by one-fifth? Is the indebtedness thereby extinguished, or carried on to the final settlement of the policy if it matures within the period of extension? If the policy does not mature in that period, is the indebtedness lost? The statutory provision, 38 U.S.C.A. § 515, is that on a reinstatement such as occurred in this case, "The amount of unpaid premiums with interest as provided in this section shall be placed as an interest-bearing indebtedness against the insurance * * * to be deducted in any settlement thereunder." It may be a vital question whether the application of the cash value

of the insurance to purchase extended insurance is a "settlement" which requires the indebtedness to be deducted from the cash value, as the Veterans' Administration seems to have decided. We do not at this time attempt to decide these questions.

Although paragraph 5 is quoted in the petition and the fact of the indebtedness is mentioned in the motion to dismiss and seems not to be controverted, the precise question made by the motion was limitation and consequent lack of permissive jurisdiction to sue the United States. That question was correctly decided as to the claim alleged which is based on disability prior to July 1, 1931. It was incorrectly decided as to the claim based on death February 25, 1937. The District Judge did not discuss the interpretation of the policy provisions touching extended insurance and the briefs do not. We deem it best that the case should proceed regularly by an answer to the merits of the petition in so far as it presents a claim arising from death while the policy was in force, and that a clearer determination be had of the facts and of the law questions that may arise on them.

We accordingly affirm the judgment dismissing the petition in so far as it alleges a claim arising from total permanent disability; and reverse it so far as the petition alleges a claim arising from death, for further proceedings touching the latter claim.