870

HUTCHESON, Circuit Judge, dissenting.

———◆———

Thomas E. Walsh, Atty., Dept. of Justice, and D. Vance Swann, both of Washington, D. C., and J. Ellis Mundy, U. S. Atty., and Harvey H. Tysinger, Asst. U. S. Atty., both of Atlanta, Ga., for appellant.

C. E. Gregory, Jr., of Atlanta, Ga., Paul T. Chance, of Augusta, Ga., and Marshall L. Állison, of Atlanta, Ga., for appellee.

Before HUTCHESON, SIBLEY, and LEE, Circuit Judges.

LEE, Circuit Judge.

This suit, brought by the administratrix of Max Grablowsky's estate, is on a $5,000 policy of United States Government (converted) insurance on Grablowsky's life. During his service in World War I, Max Grablowsky was granted a policy of United States Government annually renewable term insurance which was allowed to lapse in 1919. A portion of this insurance was re-instated and converted in 1920, and after Grablowsky's death, this policy was satisfied, thus does not enter into this action. On June 30, 1927, the insured applied for reinstatement of the remainder of the insurance, which was in the amount of $5,000. In January 1928, this application was accepted subject to provisions of the World War Veterans' Act, as amended, § 304, 38 U.S.C.A. § 515; and, when the conditions were complied with, the insured received the policy (a thirty-year monthly payment converted United States Government policy) with face value of $5,000, effective from July 1, 1927, charged with an indebtedness as described hereinafter. Premium payments were made under the new policy until July 1, 1931, when it was allowed to lapse.

The Government's contention is that the indebtedness against the policy was properly offset at the time of lapse against the cash surrender value, which was less in amount, thus precluding automatic purchase of single-premium term insurance with this cash surrender value, as provided for in the policy. On the other hand, the administratrix contends that, because of the unique character of the indebtedness and because of statutory construction, the cash surrender value should have been held unimpaired at the time of the lapse and used to purchase term insurance, and that the indebtedness should have been offset only against the face of the policy after Grablowsky's death. Had this practice been followed, the term insurance would have been in force at Grablowsky's death.

The indebtedness above referred to arose from § 304, World War Veterans' Act, as amended, 1926 amendment, and represented premiums during the period the term insurance was lapsed, 1919 to 1927. Section 304 provided that veterans could reinstate and convert lapsed war-risk insurance, though they were disabled, so long as the disability was service-connected and the veteran able to prove himself not permanently disabled. Under the law, the insured was required to pay premiums, together with interest at 5% compounded annually, for the period the term insurance was lapsed. There was a further provision allowing the lapsed premium to be charged as an interest-bearing (5% compounded annually) indebtedness against the converted policy when the veteran could not pay these premiums. This indebtedness was by the statute "to be deducted in any settlement thereunder." Grablowsky fell within the latter category and was granted a loan against the policy for the unpaid, lapsed term insurance premiums. In 1931, when the new policy was allowed to lapse, the Veterans' Administration, following established administrative procedure, assigned the indebtedness against the cash surrender value or reserve of the policy. The indebtedness, together with interest, at the time of lapse was $467.37, and the reserve $299.-85. The procedure followed, offsetting indebtedness against reserve, eliminated the reserve entirely. The policy provided, in case of default in the payment of premiums, that the cash surrender value outstanding, if the insured did not elect to take it, should be used in the purchase of a single-premium extended term policy in the face amount of the original insurance.

The case was presented on written stipulation, and the trial was limited to an argument of the legal propositions presented. The district judge directed a verdict for the plaintiff, and in due course judgment was entered on this verdict. The Government appealed.

■ The issue presented is whether the Veterans' Administrative action reflected the meaning of the statute and terms of the policy in requiring the § 304 indebtedness to be deducted from the reserve or cash value of the insurance at the time of lapse, thus preventing the cash value being used to purchase extended term insurance.

At the outset, a determination such as was reached by the lower court, and which we believe to be correct, is limited in its application to the specific situation confronting the court, that is to say, to a situation under a § 304 loan where the policy lapsed and where no option was taken at the time of lapse. The taking of any option at the time of lapse may be called an act of settlement.

It is necessary in a determination of the proper result that portions of the policy of insurance and of the 1926 amendment to the World War Veterans' Act of 1924, designated § 304, be referred to. These are set out in footnote.[1] In short, portions of the policy referred to provide for automatic

[1] Section 304: "* * * As a condition, however, to the acceptance of an application for the reinstatement of lapsed or canceled yearly renewable term insurance, where the requirements as to the physical condition of the applicant have not been complied with, or, for the reinstatement of the United States Government life insurance (converted insurance), the applicant shall be required to pay all the back monthly premiums which would have become payable if such insurance had not lapsed, together with interest at the rate of 5 per centum per annum, compounded annually, on each premium from the date said premium is due by the terms of the policy: *Provided further*, That where, within one year of this amendatory Act all of the requirements for reinstatement of yearly renewable term insurance under this section are complied with, except the payment of unpaid premiums with interest, and proof satisfactory to the director is furnished showing the applicant is unable to pay such premiums with interest or some part thereof, the application may be approved, and the amount of unpaid premiums with interest as provided in this section shall be placed as an *interest-bearing indebtedness against the insurance*, such indebtedness to bear interest at the rate of 5 per centum per annum, compounded annually, *to be deducted in any settlement* thereunder: * * *." (Emphasis added.)

Policy provisions: "5. (a) Upon written request therefor by the Insured made while this policy is in force or not later than three calendar months after

purchase of single-premium term insurance from the cash surrender value at time of lapse. In designating the reserve or cash surrender value as the amount arrived at by adding reserve and dividend accumulations and deducting from this any loans, the statute, § 304, refers to a particular type loan and places a limitation of the collection of this loan to the time of settlement of the insurance. The policy alone would preclude a decision such as was made in the district court. This does not foreclose the matter, for by the words of the policy itself it must be read in conjunction with the World War Veterans' Act of 1924, as amended; and § 304, was an amendment to that act which was passed after the policy form came into use.

The contention is made by the appellant that a treatment of the § 304 loan in the instance of automatic extension, as urged by plaintiff, is discriminatory against the veteran reinstating under the terms of that section and paying the premiums on the lapsed insurance at that time. This is not true. Equality of treatment is present at all times, for the veteran who is unable to discharge the amount due at the time of reinstatement must carry the sum as a debt against his insurance, and the indebtedness, together with interest, is deducted from the face value at settlement. Thus, at all times, he must pay interest as a charge for the carrying privilege, while the veteran who pays off his indebtedness is free from the interest burden.

When examined, it is readily seen that a loan under § 304 is radically different from the usual insurance loan. A comparison of the two types of loan forms used by the Government—Form 763, used in a § 304 indebtedness, and Form 804, the usual policy loan agreement—is revealing. The §

304 loan agreement, reading substantially the same as the statute, is:

" * * * the indebtedness and interest to be deducted from any amount of insurance in any settlement thereunder."

On the other hand, the usual loan agreement states:

"The amount of this loan or any unpaid balance thereon and accrued interest shall be deducted from any amount payable under the said policy."

The § 304 indebtedness has as its purpose the payment of premiums for the lapsed period, during which the insured received no benefit as he received no protection and the Government was under no obligation. The wording of the § 304 loan form (F. 763) follows the statute: "to be deducted from any amount of insurance in any settlement thereunder." It does not state that the indebtedness shall be deducted from any amount payable under the policy, as does the form (F. 804) which is used in loans of cash actually paid to an insured out of reserve, reducing it in amount, which type loan shall be taken into consideration on any payment under the policy.

Going further to the substance, the § 304 loan had no relation to reserve or cash surrender value but is a reinstatement charge where there is financial hardship, collection of which is deferred to the settlement date. This loan does not, of course, create any reserve, for it represents premiums which accrued during the period the term insurance was lapsed. To carry the definition of settlement to the extent urged by the Veterans' Administration and heretofore followed by them, is to discriminate against the disabled veteran unable to pay premiums on lapsed term insurance on reinstate-

---

the due date of the premium in default, and upon complete surrender of this policy with all claims thereunder, the United States will pay to the Insured the cash-surrender value hereof. The said cash-surrender value at the end of any policy year for which premiums have been paid in full, if no installments on account of total permanent disability have been paid, shall be the reserve, together with any dividend accumulations left on deposit, less any indebtedness under this policy. * * *

"(c) Upon default in payment of premium and the expiration of the grace period, if the policy has not been surrendered for a cash value or for paid-up insurance, this policy shall be extended automatically as Term Insurance payable in monthly installments for such time from the due date of the premium unpaid as the cash-surrender value will purchase when applied as a net single premium at the attained age of the Insured."

ment, for to do so would render of no avail the right created under his new policy to extended insurance on lapse until the reserve exceeded in amount the loan plus interest (in this case during the first seven or eight years). We cannot accept this construction in the absence of a specifically stated congressional intent to so treat the veteran. In this connection, it is well to observe statements made in other cases involving war-risk insurance.

In United States v. Cox, 5 Cir., 1928, 24 F.2d 944, 945, we said:

"Cases dealing with ordinary contracts of insurance are generally not applicable when considering policies of war risk insurance. A policy of war risk insurance is more or less a gratuity from the government, and was so designed to be. The United States assumed all of the extraordinary risks of war, and issued for the minimum premium what might be termed combined accident and life insurance policies, largely in return for the sacrifice to be made by the men of the United States in defense of their country. These policies and the law generally are entitled to the most liberal construction in favor of a soldier. United States v. Law, 9 Cir., 299 F. 61."

Also, in American National Bank & Trust Co. of Chicago v. United States, 7 Cir., 1941, 124 F.2d 743, 745, the following appears:

"A study of this legislation demonstrates the Congressional solicitude toward the soldier and his dependents, and the consistent action taken in liberalizing the law so as to prevent lapsed insurance. In none of these numerous enactments is there any purpose disclosed to limit or narrow a right once bestowed. On the other hand they have been continually enlarged or broadened by the removal of restrictions so as to include situations not theretofore covered."

The debate in the Senate on a proposed change in the 1926 amendment by striking the provision with which we are presently concerned indicates that the intent of Congress in this legislation was that the loan should be deducted only from the face of the policy at the time of permanent disability or death.[2]

■ To the contention that administrative decisions are entitled to great weight, assent is given. However, these determinations are by no means final, and must yield to the congressional intent as interpreted from the law.

The judgment appealed from is affirmed.

SIBLEY, Circuit Judge.

I concur in the opinion written by Judge Lee but wish to add something in reply to the view expressed by Judge Hutcheson. What the latter quotes from the opinion in Moskowitz v. United States, 5 Cir., 145 F. 2d 196, 199, was said from the viewpoint of business principles and was followed by an examination of the policy words, and resulted in the suggestion of several questions which had not then been answered by the district court or argued to this court, with the conclusion, "We do not at this time attempt to decide these questions." There was no purpose to settle the law of the case. There was no special considera-

---

[2] "Mr. Jones of New Mexico. * * * The House recommends that in those circumstances these insurance premiums should be calculated at a rate of interest of 5%, compounded annually, and that the total expense should be deducted from the face of the policy at the time of permanent disability or death. I know that this would cost the Treasury money. I am told it would cost about $15,000,000, but it is stated that the measure provides a real saving to the Treasury.

"Mr. Ashurst. Mr. President, will the Senator yield?

"Mr. Jones of New Mexico. I yield.

"Mr. Ashurst. Let us see if we understand the proposal of the House. It is that when a policy has lapsed we will say, for five years, and the soldier wishes to reinstate or renew the same, on the unpaid premiums he would be charged interest at the rate of 5 per cent per annum, compounded annually, and that would be deducted from the avails of the policy in case of permanent disability or death.

"Mr. Jones of New Mexico. The Senator understands the proposal aright. It must be shown further, that the ex-service man is not able to pay the premium."

tion of the amendment of 1926 of Section 304 of the World War Veterans' Act, 38 U.S.C.A. § 515, under which the present policy was issued, and which I think is controlling, though the policy form is the same as had previously been in use.

Prior to the amendment the Section, under a liberal policy of encouraging reinstatement by veterans, having service connected partial disabilities, of their lapsed yearly renewable term insurance, had permitted reinstatement on applications made within a limited time and on conditions not in question here, provided the applicant *paid all back premiums* since the lapse with 5% interest annually compounded. Many partially disabled veterans could not raise the cash required for reinstatement, and Congress in the 1926 amendment sought to help them, not by reinstating without regard to back premiums, but by carrying them on interest against *the policy* as a sort of security, till the policy should be finally settled. This purpose, bottomed on generosity and gratitude to the service disabled veteran rather than on the money-making purposes of a commercial insurance company, was expressed in these words: "Provided further, That where, within one year after July 2, 1926, all of the requirements for reinstatement of yearly renewable term insurance under this section are complied with, except *the payment* of unpaid premiums with interest, and proof satisfactory to the Administrator of Veterans' Affairs is furnished showing the applicant is *unable to pay* such premiums with interest or some part thereof, the application may be approved, and the amount of unpaid premiums with interest as provided in this section shall be placed as an interest-bearing indebtedness against *the insurance,* such indebtedness to bear interest at the rate of five percentum per annum, compounded annually, to be deducted *in any settlement thereunder*". (Italics added.) The policy at bar was issued on an application expressly based on this amendment, and with a written notice to that effect to the insured which fixed the amount of the premium indebtedness, though the policy was on a form previously in use and makes no reference to the amendment.

I think the statute and not the policy controls as to this statutory "indebtedness", so that the statute acts as a "rider" on the policy, "overriding" the policy as to the treatment of this "indebtedness".

This indebtedness is not, like the "loans" provided for in the policy, based on the cash surrender value or loan value of the policy and secured thereby. This policy, and others like it, had no cash surrender value, or reserve, and none was created by setting up this indebtedness. The statute expressly says it is to be "placed as an interest-bearing indebtedness against *the insurance* * * * to be deducted in *any settlement thereunder*". It has nothing to to with a cash surrender value unless the insured accepts it as a settlement of his insurance. The indebtedness is to be carried against *the insurance* as long as there is insurance. The policy provides that the cash surrender value accumulated by the actual payment of premiums shall, in default of other election by the insured, be applied automatically to extend *the insurance,* according to a table in the policy. This insurance was thus extended beyond the death of the insured. The insured had the right to thus continue his insurance, even after a lapse, by virtue of the statute. The Veterans' Administration had no right to off-set the cash surrender value against this statutory indebtedness without the consent of the insured, and apparently without notice to him, and call it a settlement of the insurance. It is not the duty of Congress to correct such errors of administration, but of the courts.

The fear that the policies like the present one might accumulate a large cash surrender value which could be taken down by the insured without paying the premium indebtedness, is without foundation. The collection of a cash surrender value is accompanied by a surrender of the policy and is clearly a settlement of the insurance in which by the words of the amendment the premium indebtedness must be deducted.

LEE, Circuit Judge, concurs in the views expressed by Judge SIBLEY in the foregoing concurring opinion.

HUTCHESON, Circuit Judge (dissenting).

When this case was here before on Moskowitz's appeal,[1] we said, "The contention now made is that under the law and the terms of the policy, the extended insurance operated notwithstanding the indebtedness against the policy, the indebtedness being carried at interest until the policy matured by death. This seems an unreasonable construction, since the extended insurance is supposed to be purchased by the cash surrender value, and it would leave the indebtedness to increase while the surrender value which was a security for the indebtedness is exhausted by the extension of the insurance. The construction ought not to prevail unless required by the applicable language."

Now with one new judge on the court, this view seems to be abandoned, in the face of the terms of the policy expressly declaring in 5(a): that "The *said cash surrender* value * * * shall be the reserve * * * less any indebtedness under this policy."; and in 5(c): "* * * this policy shall be extended automatically as term insurance * * * for such time from the due date of the premium unpaid as the *cash surrender value* will purchase when applied as a net single premium at the attained age of the insured." (Emphasis supplied). Despite the views announced in the former opinion, the majority as now constituted, adopts the view deprecated there, a view which "would leave the indebtedness to increase while the surrender value which was a security for the indebtedness is exhausted by the extension of the insurance."

Too much is said in the argument of the appellee and in the opinion of the majority about the beneficient purposes of Congress in the enactment of Sec. 304, World War Veterans' Act, as amended in 1926. Too little is said about the clear and express conditions of the insurance contract which was issued to the veterans, too little about the long continued and uniform administrative construction[2] accorded the act in dispositions under it by the Veterans' Bureau without any change in the act being made or attempted to be made in Congress.

"This administrative interpretation over a period of 17 (here 20) years, controlling the settlement of thousands of cases is entitled to great weight, 'and such construction is not to be overturned unless clearly wrong or unless a different construction is plainly required,'" United States v. Citizens Loan & Trust Co., 316 U.S. at page 214, 62 S.Ct. at page 1029.

I agree fully with what the United States says in its brief:

"If Section 304 indebtedness can only be satisfied in the event the insurance matures by total permanent disability or death, then it is submitted that the statutory requirement set forth in Section 304 (Appendix, Infra), that the premiums, with interest, be either paid or carried as an indebtedness against the insurance to be deducted in any settlement, will obviously be defeated in every case where an insured exercises his right to surrender the policy for cash after carrying it for a long period of years until the cash value (reserve plus dividend accumulations) almost equals the amount of the insurance, or carries the insurance on one of the endowment plans and it matures as an endowment. Manifestly, the Congress had no intention of according such preferential treatment to veterans who have not paid the back premiums, with interest, or of waiving the statutory requirement that the premiums be paid in such cases. And, if this decision is upheld, it is reasonable to suppose that policyholders with outstanding Section 304 liens (of which there are 2,950 active at the present) may abandon any attempt to liquidate this indebtedness where the cash surrender value almost equals the amount of insurance, or where insurance is about to mature as an endowment." I particularly agree with what is said there as to the effect of the decision below. I add: If the opinion of the majority stands it will operate as a gross discrimination against, (1) veterans who have paid their back premiums in cash; (2) veterans who, having

---

[1] Moskowitz v. United States, 5 Cir., 145 F.2d 196, 197.

[2] United States v. Citizens Loan & Trust Co., 316 U.S. 209, 62 S.Ct. 1026, 86 L.Ed. 1387; United States v. Jackson, 280 U.S. 183, 193, 50 S.Ct. 143, 74 L.Ed. 361.

304 liens on their policies, have, by paying their indebtedness, acquired a cash surrender value; and (3) those veterans who, under the long continued interpretation of the Veterans' Bureau, have lost their policies because, with the indebtedness against them, they have had no cash surrender value with which to purchase extended insurance.

What the majority holds is in effect that Congress, by granting reinstatement with Sec. 304 liens, has agreed not only to give the veteran an opportunity to keep his policy in force by paying premiums but also to waive security on the reserve for the indebtedness. I do not contend that Congress could not have done this. I think it clear, however, that nothing in the act shows any such intention. The policy issued under Sec. 304 made clear provision for deducting the indebtedness from the reserve in any calculation of the cash surrender value, and nothing in the act accomplishes a repeal or waiver of this provision. On the contrary, it is plain, I think, that Congress, having in mind the various settlements accorded in the policy, cash surrender value, paid up insurance, extended insurance, provided that "the amount of unpaid premiums with interest as provided in this section shall be placed as an interest-bearing indebtedness against the insurance, such indebtedness to bear interest at the rate of 5 per centum per annum, compounded annually, to be deducted in any settlement thereunder". The settlement made applicable here under the automatic terms of the policy was the settlement of extended insurance. The indebtedness being greater than the reserve, when the premium was not paid under the precise terms of the policy, there was a settlement for such extended insurance as the reserve less indebtedness would buy, and this amounting to nothing, there was not, there could not have been, any extended insurance. This being so, I cannot understand how the majority can hold that the policy continued in force for three years after it had lapsed for non-payment of premiums, though there was, under the unchanged provisions of the policy, no cash surrender value with which to purchase extended insurance.

When the case was here before, we said of a similar contention there made, "This seems an unreasonable construction, since the extended insurance is supposed to be purchased by the cash surrender value, and it would leave the indebtedness to increase while the surrender value which was a security for the indebtedness is exhausted by the extension of the insurance. The construction ought not to prevail unless required by the applicable language." I am of that opinion still, and I respectfully dissent from the affirmance of the judgment.