(C. D. 833)

COPELAND & THOMPSON, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 1, 1944)

*Strauss & Hedges; Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The merchandise at issue in this case consists of earthen tableware assessed for duty at 50 per centum ad valorem and 10 cents per dozen pieces under paragraph 211 of the Tariff Act of 1930. The plaintiff claims that the articles are properly dutiable at 30 per centum ad valorem and 10 cents per dozen pieces under paragraph 211 as amended by the trade agreement between the United States and the United Kingdom, T. D. 49753. At the trial counsel for the plaintiff limited the claim to "the items described on the invoice as oatmeals or oatmeal saucers wherever those items or that description occurs." (Record page 2)

Paragraph 211 of the Tariff Act of 1930 provides in part as follows:

PAR. 211. Earthenware and crockery ware composed of a nonvitrified absorbent body, including white granite and semiporcelain earthenware, and cream-colored ware, terra cotta, and stoneware, including clock cases with or without movements, pill tiles, plaques, ornaments, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware; * * * * painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 10 cents per dozen pieces and 50 per centum ad valorem.

Paragraph 211 of the Tariff Act of 1930, as amended by the trade agreement, T. D. 49753, provides in part as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 211 | Earthenware and crockery ware composed of a nonvitrified absorbent body, including white granite and semiporcelain earthenware, and cream-colored ware, terra cotta, and stoneware; any of the foregoing which is tableware, kitchenware, or table or kitchen utensils, painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner:<br>* * * ; cups and their saucers, valued at not less than $1.25 per dozen cups and dozen saucers; cups valued at not less than 80 cents per dozen; saucers valued at not less than 45 cents per dozen; all the foregoing, not specially provided for | 10¢ per dozen pieces and 30% ad val. |

At the trial three witnesses testified for the plaintiff, to wit, L. O· Lankas, salesman and assistant to the president of the importing firm, having 36 years' experience in buying and selling earthenware in 40 of the 48 states of the Union; Justin Tharaud, head of Justin Tharaud, Inc., who has been in the earthenware business for about 40 years representing foreign manufacturers and had also represented American manufacturers from 1934 to 1940; and Donald M. Miller, of Maddock & Miller, importers of chinaware and earthenware and dealers in domestic hotel ware, who has been connected with the earthenware business for 28 years, and whose firm sells a full line of earthen dinnerware throughout the United States.

The Government also produced three witnesses, to wit, Fernaud De-Maison, assistant to sales manager of Edwin M. Knowles China Co., manufacturers of earthenware, including·dinnerware, who had been in the china business since 1905, dealing with the same sort of dishes as dinnerware of earthenware, and during the last 6 years selling earthenware throughout the country; Charles L. Sebring, sales manager of Edwin M. Knowles China Co. for about 2 years; and Michael George, salesman for the Sebring Pottery Co. for 28 years, selling all kinds of dinnerware from Washington, D. C., to New York City.

At the commencement of the trial, counsel for the plaintiff stated for the record that he had advised counsel for the Government that he did not intend to prove commercial designation. Continuing he stated that he considered that the court was entitled to the aid of such qualified witnesses as he would produce to determine the ordinary trade meaning of the terms, and asserted that "common, ordinary, everyday trade meaning will govern in this case, * * *" (Record, page 20). Government counsel, on the other hand, asserted that the question for the court to determine is whether these are dishes or saucers, within the meaning of paragraph 211, as amended.

We are of the opinion that the testimony of the witnesses heretofore named is of little assistance to us in determining the common, ordinary meaning of the term "saucer," as the witnesses for both plaintiff and

the Government testified concerning the trade meaning of the term. However, the plaintiff produced a preponderance of evidence establishing that the trade meaning of the term is not at variance with the common meaning thereof appearing in the various dictionaries. In their understanding, we might say, their technical understanding, the plaintiff's witnesses apply the term "saucers" to the terms "oatmeal" and "fruit" in buying and selling such articles, and that ofttimes the term "saucers" is understood in the trade and not mentioned, the articles being merely called "oatmeals" and "fruits." The Government witnesses testified that in the trade and commerce of the United States with which they were familiar the term "saucers" is never used, except as referring to a stand for a cup or other article. However, one of Government's witnesses admitted that "some people" use the term "saucers" when referring to fruit dishes, but not in connection with "oatmeals."

The witnesses testified that the difference between the fruit and the oatmeal dishes is in the size or diameter of the dish and the depth, the fruit dishes being 4, 4½, or 5 inches in diameter and about 1⅛ inches deep, while the oatmeal dish is 6 inches in diameter and about 1½ inches deep; that the main difference is the depth, as some so-called 5-inch fruit dishes are actually 6 inches in diameter but the depth is only 1⅛ inches, whereas an "oatmeal" would be 1½ inches deep although having the same diameter.

On behalf of the plaintiff there were admitted in evidence exhibits 1 to 5, inclusive, representing the merchandise in question, which we find to consist of decorated earthenware dishes 6¼ to 6⅝ inches in diameter and from 1⅜ to 1½ inches deep, outside dimensions, and also 8 illustrative exhibits, which we find from the description of the witnesses and an inspection of the samples to be as follows: Illustrative exhibits A, after dinner saucer, 4⅝ inches in diameter and ¾ inch deep; B, tea saucer, 5⅛ inches in diameter and 1³⁄₁₆ inches deep; C, tea saucer, 6 inches in diameter and 1⅛ inches deep; D, Irish tea saucer, 6⅛ inches in diameter and ⅞ inch deep; F, fruit saucer, 5⅝ inches in diameter and ¾ inch deep; G, oatmeal saucer, 6¼ inches in diameter and 1½ inches deep; and H, an oatmeal bowl, 6⅞ inches in diameter and 2¼ inches deep. Exhibits A to G, inclusive, are all of the general shape of a saucer designed to hold a cup, except that the depth thereof varies, the oatmeal saucer being the deepest. Exhibit H has straight sides rather than the flaring sides of saucers.

Seven illustrative exhibits were also admitted in evidence on behalf of the Government. We find from the description of witnesses and an inspection of the samples that these exhibits consist of the plain white earthenware articles following: Illustrative exhibits I, dinner coffee saucer, 4⅞ inches in diameter and ¾ inch deep; collective J, standard teacup saucers, 5⅝ inches in diameter and 1 inch deep,

6 inches in diameter and $\frac{7}{8}$ inch deep; K, regular coffee saucer, $6\frac{1}{8}$ inches in diameter and $\frac{7}{8}$ inch deep; collective L, cream soup saucers, $6\frac{1}{2}$ inches in diameter and $\frac{3}{4}$ inch deep, and $6\frac{5}{8}$ inches in diameter and $\frac{3}{4}$ inch deep; collective M, 5 fruit dishes, measuring 5 inches to $5\frac{5}{16}$ inches in diameter and $1\frac{1}{8}$ to $1\frac{5}{16}$ inches deep; collective N, 4 oatmeal dishes $5\frac{3}{4}$ to $6\frac{1}{4}$ inches in diameter and $1\frac{5}{8}$ to $1\frac{3}{4}$ inches deep; and illustrative exhibit O, consisting of a catalog of Edwin M. Knowles China Co. of East Liverpool, Ohio, showing the offerings of "fruits" and "oatmeals."

The invoice herein discloses 6 items of the merchandise under consideration are described as follows: 100 oatmeals 6″ gadroon spode; 12 oatmeals 6″ gadroon spode; 12 oatmeals 6″ Chelsea spode; 12 oatmeal saucers 6″ Hamburg Crown; 20 oatmeal saucers 6″ gadroon Old Salem; and 12 oatmeals 6″ jewel spode. Upon the same invoice also appear 17 items of "fruits" the actual diameter measurements of which are given as $5\frac{1}{10}$ to $6\frac{3}{10}$ inches. These "fruits" are advisorily classified in red ink as "saucers" at 30 per centum ad valorem plus 10 cents per dozen pieces under paragraph 211, act of 1930, as amended. In this regard the evidence established that it is the practice of the collector to assess 4-, $4\frac{1}{2}$-, and 5-inch dishes for holding sauce, fruits, etc., as "saucers" at 30 per centum ad valorem plus 10 cents per dozen pieces under paragraph 211, as amended, even though known in the trade as "fruits."

Not being aided by the testimony of these witnesses, we must consult various dictionaries for the common meaning thereof, as "it is well-settled law in customs jurisprudence that the courts, in determining the common meaning of a term, may accept or reject evidence of such meaning and may, as an aid, consult the dictionaries, lexicons, and written authorities as to such common meaning." See *United States* v. *Moscini*, 19 C. C. P. A. 144, T. D. 45261. Our appellate court stated in the case of *United States* v. *Stetson*, 21 C. C. P. A. 3, T. D. 46319, as follows:

In making this determination the court may rely upon its own understanding of the word or term used, and it may assist its own understanding by reference to the works of standard lexicographers, scientific authorities, the testimony of witnesses, or by such other means as may be available. If testimony be offered upon the common meaning of a statutory word or term such testimony is advisory only and has no binding effect on the court. * * *.

Turning first to the dictionaries for enlightenment as to the common meaning we find that a dish is defined in the Century Dictionary and Cyclopedia as follows:

*dish, n.* * * * 1. Any rimmed and concave or hollow vessel, of earthenware, porcelain, glass, metal, or wood, used to contain food for consumption at meals. Originally applied to very shallow or flat vessels, as plates and platters, the term now usually includes any large open vessel, more or less deep, and with or without a cover, used to contain food or table-drink, such as tea, coffee, or chocolate.

The use of the term to include drinking-vessels, as bowls and cups, is less common and seems to be obsolescent, except as such vessels are included in the collective plural *dishes*. A *set of dishes* includes all the vessels (except drinking-glasses) requisite for furnishing a table, as platters, plates of various sizes, vessels for vegetables, fruits, preserves, etc., tureens, bowls, and cups and saucers.

\*     \*     \*     \*     \*     \*     \*

In the same dictionary "saucer" is defined as follows:

*saucer* \* \* \* 1. A small dish or pan in which sauce is set on the table; a sauce-dish.
2. A small, round, shallow vessel, a little deeper than a plate, upon which a cup, as a tea- or coffee-cup, is placed, and which is designed to retain any liquid which may be spilled from the cup.—3. Something resembling a saucer.

\*     \*     \*     \*     \*     \*     \*

Funk & Wagnalls New Standard Dictionary of the English Language defines "saucer" as follows:

1. A dish, usually round, concave, and shallow, designed to hold a tea cup or coffee-cup.
2. A small dish used to serve confections, fruits, etc.
3. A small receptacle used by artists to hold oil or colors and sometimes attach to the palette.

\*     \*     \*     \*     \*     \*     \*

Webster's New International Dictionary defines "saucer" as follows:

1. A dish or plate to contain sauces at table. *Obs.*
2. A small shallow dish in which a cup is set at table.
3. Any of various things resembling or likened to a saucer in shape; as: *a* A saucershaped part of a plant. *b Naut.* (1) A flat, shallow caisson for raising sunken ships. (2) A shallow socket for the pivot of a capstan. \* \* \* .

We need not rely solely upon the common meaning, as announced by the various lexicographers, however, as the United States Tariff Commission in 1938 compiled digests of information concerning products on which concessions were granted by the United States in the trade agreement with the United Kingdom. These digests are based on information gathered by the Tariff Commission in compliance with that part of Senate Resolution 334, 72d Congress, 2d session, which called for a revision of summaries of tariff information previously compiled by the Commission. See "Trade Agreement Between the United States and the United Kingdom—Digests of Trade Data with Respect to Products On Which Concessions Were Granted by the United States," Volume III—Schedule 2—Earths, Earthenware, and Glassware, pages 46, 47, wherein the following appears:

The reduced rate of duty provided in the trade agreement is limited to decorated or colored earthenware and stoneware plates, cups and saucers (for hotel and restaurant as well as for household use) valued at not less than specified amounts; the sizes of the plates further limit the application of the reduced rate.

Except for the value bracket limitations, no restriction on the types of decorated and colored earthenware plates, cups, and saucers entitled to the reduction in duty was written into the agreement, since it was intended to cover all types of

plates, cups, and saucers coming within the descriptive language. A complete list of the different articles would not be practicable, but the more important articles include flat plates, coupe and deep soup plates, cake and compartment plates, tea, coffee, cream soup, bouillon and other cups and saucers, *as well as saucers not used in conjunction with cups, such as fruit and oatmeal saucers.* [Italics not quoted.]

In the light of the foregoing definitions of "saucer" and the manifest intention of the contracting parties to the trade agreement in question as evidenced by the Tariff Commission summary, *supra*, and especially noting the samples and illustrative exhibits before us, it becomes at once apparent that the principal difference between a saucer, designed to hold a cup of some sort, and a fruit and oatmeal, is in the depth of the dish. Saucers to hold cups, and fruits, have the same or similar diameters as oatmeals, but oatmeals are generally deeper than fruits and the fruits are generally deeper than saucers designed to hold cups. In general appearance the oatmeals and fruits are deep saucers. The report of the Tariff Commission would seem to settle the intention of the parties as to the scope of the term "saucers." Such reports are well within the scope of the references available for consultation as announced in the *Stetson* case, *supra*. In fact our appellate court considered a similar report in the case of *United States* v. *Armaghanian,* 27 C. C. P. A. 170, C. A. D. 81, in determining the meaning to be given to the term "Silk bolting cloth." There an analysis of the Swiss Trade Agreement was made by the Department of State.

In the invoice papers the merchandise under consideration was invoiced as "oatmeals," and "oatmeal saucers." These articles are practically of the same size except for depth as certain "fruits" appearing upon the invoice. Such fruits were classified as "saucers" and assessed with a lower rate of duty. The reason for the differentiation becomes apparent upon reading T. D. 49887 (4) in the summary of unpublished customs decisions, where a change in practice in classification is brought to the attention of collectors. This Treasury decision reads as follows:

(4) *Earthenware.*—Oatmeals, grapefruits, custards without handles, and so-called puree cups, wholly or in chief value of any of the ware enumerated in paragraph 211, Tariff Act of 1930, are dutiable at the appropriate rates under that provision of law rather than under item 211 of the British Trade Agreement. As this ruling will result in the assessment of duty on such merchandise at a rate higher than that heretofore assessed under a uniform practice, it should be applied to such merchandise only when entered for consumption or withdrawn from warehouse for consumption after 30 days after this abstract is published in the weekly TREASURY DECISIONS. Bureau letter to collector of customs, New York, N. Y., May 29, 1939.

It is therefore apparent that the Treasury Department in the foregoing has attempted to change and restrict the terms of the trade agreement in question.

We are of the opinion that the merchandise invoiced as "oatmeals" or "oatmeal saucers" is properly dutiable at 30 per centum ad valorem and 10 cents per dozen pieces under paragraph 211 of the Tariff Act of 1930, as amended by T. D. 49753, as claimed.

Judgment will therefore be rendered in favor of the plaintiff directing the collector to reliquidate the entry and make refund accordingly.