(C. D. 955)

JOHNSON BROS. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 11, 1945)

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff. *Paul P. Rao,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The merchandise in question consists of earthen tableware assessed for duty at 50 per centum ad valorem and 10 cents per dozen pieces under paragraph 211 of the Tariff Act of 1930. The plaintiff claims that the merchandise is dutiable at 30 per centum ad valorem plus 10 cents per dozen pieces under said paragraph as modified by the trade agreement between the United States and the United Kingdom, T. D. 49753. At the trial counsel for the plaintiff limited the claim to "the items described on the invoice as puree

cups and chowder cups" and to such items described "as oatmeal saucers or as oatmeals." As to the oatmeals or oatmeal saucers it was stipulated and agreed between counsel that they were the same as the oatmeal saucers the subject of decision in the case of *Copeland & Thompson* v. *United States*, 12 Cust. Ct. 85, C. D. 833, wherein such articles were held properly dutiable at 30 per centum ad valorem and 10 cents per dozen pieces under paragraph 211 as modified by the trade agreement. The record in that case was admitted in evidence as part of the evidence herein relative to the classification of the oatmeals or oatmeal saucers appearing on the invoice.

Paragraph 211 of the Tariff Act of 1930 provides in part as follows:

PAR. 211. Earthenware and crockery ware composed of a nonvitrified absorbent body * * * painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 10 cents per dozen pieces and 50 per centum ad valorem.

Paragraph 211 of the Tariff Act of 1930, as amended by the trade agreement, T. D. 49753, provides in part as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 211 | Earthenware and crockery ware composed of a nonvitrified absorbent body * * *; any of the foregoing which is tableware, kitchenware, or table or kitchen utensils, painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner: * * *, cups and their saucers, valued at not less than $1.25 per dozen cups and dozen saucers; cups valued at not less than 80 cents per dozen; saucers valued at not less than 45 cents per dozen; all the foregoing, not specially provided for. | 10¢ per dozen pieces and 30% ad val. |

At the trial two witnesses testified for the plaintiff. The first witness, George J. Higginson, has been in the business of buying and selling earthenware and chinaware for the past 40 years, and has been traveling throughout the United States, calling upon various buyers and users of earthenware and china articles for the past 30 years. The second witness, Justin Tharaud, Jr., of Justin Tharaud, Inc., has been in the earthenware business for 22 years, personally selling china and earthenware throughout the United States.

Three witnesses testified for the Government, to wit, F. Desmaison with Edwin M. Knowles China Co., manufacturers of earthen dinnerware, a salesman since 1904, and during the last 8 years selling earthenware throughout the United States; Authur G. Renz, also with the same company, and in the chinaware and earthenware business since 1910; and Wilbert A. Betz, secretary of the United States Potters' Association for 3 years, whose experience was confined to noting the manner in which articles were listed in the catalogs of domestic manufacturers.

The testimony of the witnesses is substantially similar to that in the *Copeland & Thompson* case, *supra*. The plaintiff's witnesses, in

selling the chowder and puree cups throughout the United States, referred to them as "cups." The Government's witnesses, on the other hand, sold the articles as onion soups, lugged soups, lug soups, or lug oatmeals, not mentioning the word "cups." One of the Government witnesses testified that B. Altman retails such articles as lugged soups. However, the witness later admitted, when shown a newspaper advertisement of B. Altman & Co. in the New York Times, that the picture of an item referred to as a cup was, in all material respects, the same as exhibits 1 and 2. (See illustrative exhibit R.)

There were many exhibits illustrative of various well-known cups admitted in evidence, some with saucers and some without, such as tea cups, coffee cups, after-dinner coffee cups, jumbo coffee cups, bouillon cups, cream soup cups, handled custard cups, custard cups without handles, single egg cups, and double egg cups.

The plaintiff contends that the puree and chowder cups are *cups* within the common meaning of the term; that the testimony of the witnesses support that conclusion; and that it was the manifest intention of the parties to the trade agreement to include all kinds of *cups*. The Government contends that "puree and chowder *dishes*" are not commonly known as *cups*. Although counsel admits that the articles here, which he further terms as "puree and chowder *plates*," are not similar to the familiar soup plates, he contends that they more nearly resemble such plates by design and by use to which they are put than they do a cup.

The question therefore is whether the articles at issue come within the common meaning of a plate or of a cup.

Webster's New International Dictionary, second edition, defines a cup as:

1. A small open bowl-shaped vessel used chiefly to drink from, with or without a handle or handles, a stem and foot, or a lid; as, a wine *cup*; a Communion *cup*; specif., a handled vessel of china, earthenware, or the like, commonly set on a saucer and used for hot liquid food such as tea, coffee, or soup. The tea cup is of standardized size containing one half pint, the coffee cup is larger, and the after-dinner coffee cup is much smaller. There are two types of soup cups, the bouillon cup and the cream-soup cup, both with two handles, and the latter larger than the former.

A plate is defined in the Century Dictionary and Cyclopedia in part as follows:

*plate* * * * 3. A shallow dish of pottery, porcelain, or metal, on which food is served at table, or from which it is eaten; * * *

A dish is defined in the Century Dictionary and Cyclopedia as follows:

*dish*, n. * * * 1. Any rimmed and concave or hollow vessel, of earthenware, porcelain, glass, metal or wood, used to contain food for consumption at meals. Originally applied to very shallow or flat vessels, as plates and platters, the term now used usually includes any large open vessel, more or less deep, and with or without a cover, used to contain food or table-drink, such as tea, coffee, or

chocolate. The use of the term to include drinking-vessels, as bowls and cups, is less common and seems to be obsolescent, except as such vessels are included in the collective plural *dishes*. A *set of dishes* includes all the vessels (except drinking-glasses) requisite for furnishing a table, as platters, plates of various sizes, vessels for vegetables, fruits, preserves, etc., tureens, bowls, and cups and saucers.

\* \* \*

The intention of the parties to the trade agreement as set forth in the "Digests of Trade Data with Respect to Products On Which Concessions Were Granted by the United States," volume III, schedule 2, at pages 46 and 47, appears in the following:

The reduced rate of duty provided in the trade agreement is limited to decorated or colored earthenware and stoneware plates, cups and saucers (for hotel and restaurant as well as for household use) valued at not less than specified amounts; the sizes of the plates further limit the application of the reduced rate.

*Except for the value bracket limitations, no restrictions on the types of decorated and colored earthenware plates, cups, and saucers* entitled to the reduction in duty *was written into the agreement, since it was intended to cover all types of plates, cups, and saucers* coming within the descriptive language. A complete list of the different articles would not be practicable, but *the more important articles include flat plates, coupe and deep soup plates*, cake and compartment plates, *tea, coffee, cream soup, bouillon and other cups and saucers*, as well as saucers not used in conjunction with cups, such as fruit and oatmeal saucers. [Italics not quoted.]

From the foregoing definitions and the description of the articles covered by the trade agreement in the Digest of Trade Data, it seems clear that there is a distinct difference between plates, cups, and saucers. Plates and saucers come under the general term of dishes but the application of the term to cups and bowls is not common and according to the lexicographers has become obsolete, except when applied to a set of dishes including cups and bowls. From an inspection of the samples, exhibits 1 and 2, representing the imported merchandise, it is at once apparent that the articles are not within the common meaning of *plate*, as neither of the articles before us may be termed a "shallow dish of pottery." From the fact that a distinction is made in the trade agreement between soup plates and cream soup, bouillon and other cups, it is clear that the contracting parties recognized that there were soup plates and soup cups, and that they intended to include both articles within the modified rates of certain earthen tableware.

Inasmuch as soup is taken from cups as well as from plates, in our opinion, such articles of tableware as are bought and sold by the name of the soup it is designed to contain, such as puree, bouillon, chowder, or cream would be incompletely described unless accompanied by a sample because it would be impossible to determine whether the descriptive term was used in connection with plates or cups. In other words, the term "onion soups" would refer to both a soup cup or a soup plate. It would seem therefore that the trade term of a cup, as applied to the various kinds of soup served therein, is identical with the common meaning thereof.

From a careful consideration of the evidence, the samples, and in the light of the common meaning of the terms, we are of the opinion that the puree cups and the chowder cups are properly dutiable under paragraph 211, as amended by said trade agreement, at the rate of 10 cents per dozen pieces and 30 per centum ad valorem. Following the case of *Copeland & Thompson, supra,* we further hold that all articles invoiced as oatmeal saucers or as oatmeals, are also dutiable at the same rate.

Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entry accordingly and to refund all duties taken in excess.