(C. D. 2226)

ROSS PRODUCTS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 9, 1961)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is a protest involving earthenware egg-cups, imported from Japan on or about March 5, 1956. Duty was assessed at 10 cents per dozen pieces and 40 per centum ad valorem under paragraph 211 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, effective September 10, 1955, T.D. 53877, as earthenware tableware cups, valued over 50 cents but under $1 per dozen. It is claimed that the merchandise is not cups and is properly dutiable under said paragraph, as modified, at 10 cents per dozen pieces and 25 per centum ad valorem, as earthenware tableware articles, other than plates, cups, and saucers, valued at not more than the minimum value specified in respect of the like article. The minimum value specified for articles which are not plates, cups, or saucers is $1 per dozen articles. It was stipulated at the trial that the value of the imported merchandise is $7.35 per gross or 61 cents per dozen.

The pertinent provisions of the tariff act, as modified, are as follows:

211   Earthenware and crockery ware composed of a nonvitrified absorbent body, including white granite and semi-porcelain earthenware, and cream-colored ware, terra cotta, and stoneware, including clock cases with or without movements, pill tiles, plaques, ornaments, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware; all the foregoing, whether plain white, plain yellow, plain brown, plain red, plain black, painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for:

Tableware, kitchenware, and table and kitchen utensils:

\*     \*     \*     \*     \*     \*     \*

cups, valued over 50 cents but under $1 per dozen;

saucers, valued over 30 but under 55 cents per dozen; and

articles which are not plates, cups, or saucers and which are valued over $1 but under $2 per dozen articles;

all the foregoing_____ 10¢ per doz. pieces and 40% ad val.

Plates of the diameters specified heretofore in this item, cups, saucers, and articles other than plates, cups, and saucers; each of the foregoing which is valued at not more than the minimum value specified heretofore in this item in respect of the like article.    10¢ per doz. pieces and 25% ad val.

\*     \*     \*     \*     \*     \*     \*

A sample of the imported merchandise was received in evidence at the trial and marked plaintiff's exhibit 1. It consists of a decorated earthenware article in the form commonly known as an eggcup. It is 3½ inches high; the upper portion is 2⅝ inches in diameter and 2 inches deep; and the lower portion is 2 inches in diameter and 1¼ inches deep.

Alexander Mintz, vice president and buyer of ceramics of Ross Products, Inc., the plaintiff herein, testified as follows: His duties include traveling to Japan and placing orders there for ceramics and selling the merchandise throughout the United States. He is familiar with the merchandise involved herein and has been buying it and selling it in the wholesale trade in the United States for 8 or 10 years. It is commonly known as an eggcup and is used for the serving and eating of eggs. He has sold articles like plaintiff's exhibit 1 to jobbers and department and chainstores as eggcups. He has never heard any other use for it. He has never sold it with a saucer and did not know of any sales of eggcups and saucers. He has received orders from chainstores throughout the United States for eggcups, but he has never received an order where just the word "cup" was used.

The witness has handled cups and saucers, and described a cup as—

\* \* \* an article which primarily has a handle, is generally used for drink or drinking of beverages, and in my mind the shape would greatly determine what constitutes a cup, and the fact that it could be placed on a saucer, this saucer having an indentation to hold the cup.

He said that plaintiff's exhibit 1 did not have a footing; he had never seen it used with a saucer, but he had seen it used with a plate.

The witness stated that he was familiar with custard cups, cream soup cups, bouillon cups, and sake cups. He had seen sake cups and

custard cups without handles, but not soup cups. He said that teacups and coffee cups always have handles. He described a sake cup as a wine cup used by the Japanese to drink hot rice wine from; it is about 1½ to 2 inches high and holds about a tablespoon of hot rice wine; it is used in the United States, so far as he knows, as an ornamental novelty.

Plaintiff claims that an eggcup is not a cup as that word is ordinarily used; that a cup is a bowl-shaped vessel used chiefly to drink from; that the word "cup," when applied to ceramics, refers to articles commonly set in saucers and used for hot liquids, such as tea, coffee, or soup.

There being no evidence as to a commercial designation, the word "cup" must be given its common meaning. *Armand Schwab & Co., Inc.* v. *United States*, 32 C.C.P.A. (Customs) 129, C.A.D. 296; *United States* v. *Mercantil Distribuidora et al.*, 43 C.C.P.A. (Customs) 111, C.A.D. 617. The common meaning of a tariff term is a matter of law to be determined by the court. *United States* v. *O. Brager-Larsen*, 36 C.C.P.A. (Customs) 1, C.A.D. 388. While the court may consider the opinion of witnesses on the point, the usual rule is to consult dictionaries and lexicons. *United States* v. *Tropical Craft Corp.*, etc., 42 C.C.P.A. (Customs) 223, C.A.D. 598.

The following definitions are pertinent to the issue involved herein:

cup

1. A small open bowl-shaped vessel used chiefly to drink from, with or without a handle or handles, a stem and foot, or a lid; as, a wine *cup*; a Communion *cup*; specif., a handled vessel of china, earthenware, or the like, commonly set on a saucer and used for hot liquid food such as tea, coffee, or soup. The tea cup is of standardized size containing one half pint, the coffee cup is larger, and the after-dinner coffee cup is much smaller. There are two types of soup cups, the bouillon cup and the cream-soup cup, both with two handles, and the latter larger than the former. [Webster's New International Dictionary, second edition, 1953.]

1. A small drinking-vessel; especially, a vessel of chinaware or pottery, used with a saucer in serving common beverages, as coffee or tea; sometimes limited, in a vessel having a foot or base, to the bowl. Cups may be made of earthenware, metal, celluloid, or paper. * * * 3. The ornamental vessel used in administering the sacramental wine; also, the wine itself. [Funk & Wagnalls New Standard Dictionary, 1931.]

a drinking vessel, usually in the form of a half sphere, with or without a foot or handles. The footless type with a single handle is preserved in the ordinary tea-cup. The cup on a stem with a base is the usual form used in the celebration of the eucharist, to which the name "chalice" is generally given. [Encyclopaedia Britannica, vol. 6, p. 869.]

egg cup

A cup made to hold an egg to be eaten from the shell, or sometimes made double with one cup larger to break the egg into. [Webster's New International Dictionary, 1930 edition.]

eggcup

A cup made to hold an egg which is to be eaten from the shell. [Webster's New International Dictionary, second edition, 1953.]

A cup, of glass or china, for use in eating soft-boiled eggs. [Funk & Wagnalls New Standard Dictionary, 1931.]

custard cup

A heat-resistant cup of porcelain or glass, in which an individual custard is baked. [Webster's New International Dictionary, second edition, 1953.]

measuring cup

A cup containing a half pint, and marked so that portions may be accurately determined. [Webster's New International Dictionary, second edition, 1953.]

fruit cup

A mixture of cut fruits served in a *cup*. [Webster's New International Dictionary, second edition, 1953.] [Emphasis supplied.]

sherbet

2. A water ice; specif., a water ice to which milk, egg white, or gelatin is added before freezing; also, a glass *cup* for serving this water ice. [Webster's New International Dictionary, second edition, 1953.] [Emphasis supplied.]

It follows from these definitions and from common knowledge that, when used in connection with china and earthenware, the term "cup" standing alone designates a bowl-shaped drinking vessel commonly set on a saucer and used for the service of hot liquids, such as tea, coffee, or soup. In combination with other words, it describes articles, more or less cup-shaped, used for other purposes, such as eggcups, custard cups, measuring cups, sherbet cups, and fruit cups.

Paragraph 211 of the Tariff Act of 1930, as originally enacted, provided for earthenware articles, including "* * * mugs, cups, steins, * * * and all other articles." Effective January 1, 1939, the Tariff Act of 1930 was modified by a trade agreement with the United Kingdom, T.D. 49753, which provided, among other things, for a reduction in duty on certain earthenware tableware and kitchenware plates, cups, and saucers of specified sizes and values. The intention of the parties to the agreement was set forth in the "Digests of Trade Data with Respect to Products On Which Concessions Were Granted by the United States," volume III, schedule 2, pages 46–47, as follows:

The reduced rate of duty provided in the trade agreement is limited to decorated or colored earthenware and stoneware plates, cups and saucers (for hotel and restaurant as well as for household use) valued at not less than specified amounts; the sizes of the plates further limit the application of the reduced rate.

Except for the value bracket limitations, no restrictions on the types of decorated and colored earthenware plates, cups, and saucers entitled to the reduction in duty was written into the agreement, since it was intended to cover all types of plates, cups, and saucers coming within the descriptive language. A complete list of the different articles would not be practicable, but the more important articles include flat plates, coupe and deep soup plates, cake and compartment plates, tea, coffee, cream soup, bouillon and other cups and

saucers, as well as saucers not used in conjunction with cups, such as fruit and oatmeal saucers.

This excerpt was quoted by the court in *Johnson Bros.* v. *United States*, 15 Cust. Ct. 113, C.D. 955, in which it was held that puree cups and chowder cups were included in the term "cups." In the course of the opinion, the court stated (p. 115):

There were many exhibits illustrative of various well-known cups admitted in evidence, some with saucers and some without, such as tea cups, coffee cups, after-dinner coffee cups, jumbo coffee cups, bouillon cups, cream soup cups, handled custard cups, custard cups without handles, single egg cups, and double egg cups.

However, since the case involved only puree cups and chowder cups, there was no actual decision that eggcups were cups within the meaning of the tariff act, as modified.

Defendant relies heavily upon the above-quoted excerpt from the Digests of Trade Data in support of the proposition that all types of cups, including eggcups, were intended to be covered by the trade agreement. It is to be noted, however, that the exemplars enumerated are all cups of the type used with saucers for the service of hot liquids.

In *Ross Products, Inc.* v. *United States*, 40 Cust. Ct. 158, C.D. 1976, we held that the imported merchandise was a mug rather than a cup on the ground that it was more or less cylindrical in form, was heavier than a cup, was shaped differently, and was not used with a saucer.

We stated, in *United China & Glass Co.* v. *United States*, 40 Cust. Ct. 208, 212, C.D. 1983:

It is evident that all *plates* falling within the size and value specifications were intended to be covered by the trade agreements, but it is equally apparent that articles which are not plates, cups, or saucers are not included. [Emphasis quoted.]

In that case, we held that a stoneware article, 10 inches in diameter, 1¼ inches deep, not having a flat rim but curving directly from the edge toward the center, and having a flat center portion, 4¾ inches in diameter, was not a plate but a bowl. We pointed out that it was unsuitable for use as a dinner plate because of its curved shape, depth, instability, and small flat area, and concluded that it was not the type of article commonly considered to be a dinner plate. We noted that only one witness experienced in the trade called it a plate.

In the instant case, the only witness testified that an eggcup is not a cup and is not bought and sold as such. In fact, an eggcup is not one of the articles which come to mind when the word "cup" is used in connection with ceramic tableware or kitchenware. It is not used to drink from nor is it bowl-shaped nor does it have a saucer as a companion piece, but is ordinarily set upon a plate. It is designed to hold an egg which is generally eaten from the shell. The containing portion is in an elliptical shape to fit the egg rather than in a bowl shape con-

venient for drinking. It can be identified only by the use of the word or prefix "egg" preceding "cup." It is not known, bought, or sold under any designation other than as an eggcup.

We conclude that an eggcup does not fall within the common meaning of the term "cup" nor within the meaning of said term as used in the trade agreements.

For the reasons stated, the protest is sustained, and the merchandise is held properly dutiable under paragraph 211 of the Tariff Act of 1930, as modified, at 10 cents per dozen pieces and 25 per centum ad valorem, as earthenware tableware articles, other than plates, cups, and saucers, valued at not more than $1 per dozen articles. Judgment will be rendered accordingly.