Before the First Division, February 5, 1958

**No. 61534.**—Louis Marx & Co., Inc., and Gehrig Hoban & Co., Inc. *v.* United States, protest 278488–K (New York).

Oliver, Chief Judge: This protest is directed against the classification of merchandise, described on the invoice as "Wooden Educational Blocks," which the collector assessed with duty at the rate of 35 per centum ad valorem under the residuary provision in paragraph 1513 of the Tariff Act of 1930, as modified by T. D. 52739, supplemented by T. D. 52820, for toys, not specially provided for. Plaintiffs claim that the articles are properly dutiable at only 25 per centum ad valorem under the provision in paragraph 1513, as amended by T. D. 51802, for toy "building blocks * * * valued at 8 cents or more per pound."

Counsel for the respective parties stipulated that the blocks in question are valued at over 8 cents per pound. By virtue of the classification invoked by the collector and under the claim alleged by plaintiffs, there is implied by the respective parties a concession that the blocks in question are toys within the statutory definition of the term, set forth in paragraph 1513 of the Tariff Act of 1930, as follows:

Par. 1513. * * * As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. * * *

Thus, the sole question for determination is whether these blocks are the specific kind of toys contemplated by the provision for "building blocks" in said amended

paragraph 1513. If they are, then plaintiffs' claim is good; otherwise, the collector's classification is correct.

Plaintiffs' only witness was the import manager of Louis Marx & Co., Inc., a manufacturer and importer of toys, and the importer of the blocks under consideration. The witness identified a sample of the merchandise in question. It consists of light wooden cubes, 1¼ inches square, compactly arranged in a cellophane container (plaintiffs' exhibit 1). Four sides of each cube have a different letter of the alphabet, and two sides show the outline and the name of an animal. The witness stated that the imported blocks are never sold by themselves but that they are always put into a toy truck of domestic manufacture and the two items—blocks and truck—are sold as an entity. He described the use of the imported·blocks as follows (R. 9):

A child, pre-school child, two, two and one-half, would take these blocks and build one on top of the other, or put one here, one here, one on top, or make a platform, throw them over; build in their own imagination something which they themselves can visualize. That is the way I have seen it, my own child, seen people.

When, on cross-examination, the witness was asked where and by whom he had seen these blocks used, he said, "Just my own family, such as my nieces," and his own child, 1½ years of age.

Plaintiffs' evidence is not impressive, and it loses all force and effect toward a favorable consideration of plaintiffs' claim, in the light of defendant's proof, consisting of the oral testimony of two witnesses and illustrative exhibits that reflect the difference between the toy blocks in question and toy building blocks. Following is a detailed review of the testimony of each of defendant's witnesses.

Albert H. Prow has been, for the past 4 years, the sales representative, located in New York City, of Blockraft, Inc., of Cedar Springs, Mich., manufacturer of various types of toy wood blocks, including articles such as those under consideration. He characterized the blocks in question (plaintiffs' exhibit 1, *supra*) as "A, B, C blocks, or alphabet blocks" and testified that he had seen them used "in homes, in kindergartens, Sunday schools, places like that, where there are infants, young children." He stated that these blocks are education toys, as they teach a child the alphabet and also color differentiation. The witness produced samples (three) of building or construction blocks (defendant's collective exhibit A). One box, labeled "Snap-N-Play Building Blocks," contains small, colored, wood blocks of different shapes, each being fitted with a metal snap that facilitates connecting or joining the pieces for the construction of different kinds of toys, such as cars, airplanes, and cannons. Another box is labeled "CONSTRUCTION BLOCKS" and contains wood blocks of different colors and sizes with holes bored at certain places in the sides and ends. With the use of small wood dowels that are included with the set, the different blocks can be joined to create "various types of cars and other objects." (R. 17.) The third sample, making up the collective exhibit, consists of a bag of grooved hardwood blocks in 11 basic shapes, evidently intended for the use of a child capable of building some definite object within the sphere of his imagination. Distinguishing between the toy blocks in question (plaintiffs' exhibit 1, *supra*) and the building or construction blocks (defendant's collective exhibit A), the witness stated as follows (R. 17):

First of all, I believe that the small blocks here, Exhibit 1, are just basically cubes. They would be used by infants who are looking for something to grasp. I imagine that is one of the first instincts of a child. They probably use them to chew on, and as they were able to manipulate them more, they would stack one on top of the second, and then knock them down for their own amusement. In my opinion, I think they probably would be used by the youngest age group.

The construction blocks in the two boxes, the Snap-N-Play and the dowel construction blocks, would be used by slightly older children who had the dexterity and ability to manipulate the dowels and snaps, and would create items that their imagination might dictate, even though they might not be recognizable to an adult. Then going to this set——

Q. Referring to the ones in the bag?—A. Yes. It would require a child of more mature—a more mature child who has seen and observed various structural shapes, etc., and from that they would try to recreate buildings, various objects, that could be built from the 11 basic shapes in the bag.

The witness concluded his testimony with the statement that he had personally observed children using and working with the various kinds of construction or building blocks (defendant's collective exhibit A) in the manner he explained.

William M. Thompson, defendant's second witness, stated that he had approximately 20 years' experience as salesman for companies that manufactured A, B, C blocks, building blocks, construction sets, and various games. His testimony concerning the blocks in question is corroborative of that offered by defendant's previous witness, to the effect that the articles in question are known as "alphabet or A, B, C blocks" and that they are educational, as they enable a child to "learn his letters." He produced a sample of alphabet blocks (defendant's illustrative exhibit B) which, except being a larger size (1⅝ inches square), are substantially the same as the blocks involved herein. In describing "building blocks," the witness stated as follows (R. 28):

Building blocks can be made of wood, or clay, or any plastic material and they consist of different shapes, assorted shapes, usually in multiple sizes, so that by using those shapes you can create different structures or buildings, or objects.

He then identified the three samples (collective exhibit A, *supra*) as within the class of building blocks.

Distinguishing between the blocks in question and building blocks, the witness testified as follows:

* * * With these building blocks the child is creating or making something, a structure, or an automobile, or boat, or bridge. With the A, B, C blocks there is just one basic shape, a cube, and the only thing a child can do with those is put one or two on top of each other and knock them over. He can turn them over and see the pictures or the letters.

Here, as in all cases where the issue relates to toys, the samples are potent witnesses. The samples before us in this case tend to support the collector's classification. The toy blocks in question (plaintiffs' exhibit 1) are merely small cubes, designed for handling by younger children who could grasp, stack, and knock them down for their amusement. With the use of these blocks, a child might learn the alphabet or possibly get an idea about certain animals. They are totally unlike the building or construction blocks (defendant's collective exhibit A) which, by their various shapes and sizes and somewhat peculiar construction, show that they are intended for the amusement of older children capable of putting a collection of the blocks together to create or build some particular object.

Counsel for plaintiffs, in their brief, have set forth several definitions of "block" and "building block." Exemplary thereof and most appropriate to the present discussion are the definitions taken from "The Century Dictionary and Encyclopedia" (1906, volume 1), which are quoted in plaintiffs' brief as follows:

block, n. * * * 1. Any solid mass of matter, usually with one or more plane or approximately plane faces: as, a *block* of wood, stone, or ice; sometimes, specifically, a log of wood.

building block, n. * * * 2. One of a set of blocks with which children imitate the construction of buildings.

The significant difference in the foregoing definitions, so far as the present issue is concerned, is in the showing that the word "block" is a generic term to include any solid mass of matter that can be composed of different materials and that the designation "building block" relates to a particular kind or class of blocks, designed for a specific use.

Consistent with the definitions, hereinabove set forth, and giving proper effect to the distinction expressed by the trade agreement negotiators in their modification of paragraph 1513, *supra*, particularly with respect to the competing provisions involved herein, it is our opinion that the articles in question are not building blocks within the provision therefor in paragraph 1513, as amended, *supra*.

It is a fundamental principle in customs litigation that the plaintiff in a classification case has the twofold burden of proving the correctness of the alleged claim, as well as showing that the collector's classification is wrong. *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 C. C. P. A. (Customs) 150, C. A. D. 227; *United States* v. *Enrique C. Lineiro*, 37 C. C. P. A. (Customs) 5, C. A. D. 410. On the basis of the present record, plaintiffs herein have failed to sustain their burden.

For all of the reasons hereinabove set forth, we hold the merchandise in question, described on the invoice as "WOODEN EDUCATIONAL BLOCKS," to be properly dutiable at the rate of 35 per centum ad valorem under paragraph 1513, as amended, *supra*, as toys, not specially provided for, as classified by the collector.

The protest is overruled and judgment will be rendered accordingly.