**No. 66198.**—Bruce Duncan Co., Inc., a/c School Furniture Import Co. *v.* United States, protest 312348–K (Los Angeles).

OLIVER, Chief Judge: This protest involves boxed sets of wooden toys. A sample of each set is in evidence (plaintiff's exhibits 1 to 6, inclusive). The cover of the box holding the set identifies its contents, not only by naming the articles, but also through a pictorial illustration depicting the use of the merchandise. Three of the sets, characterized as "Beginners Set" (plaintiff's exhibit 1), "Junior Set" (plaintiff's exhibit 2), and "BUILDERS SET" (plaintiff's exhibit 3), consist of "SNAP TRAIN AND TRACKS WITH BUILDING BLOCKS." The so-called "MASTER SET" (plaintiff's exhibit 4), also described as "SNAP TRAIN AND TRACKS," includes "Train, Straight Tracks, Curved Tracks, Switches, Crossing, and Ramps." The remaining two sets (plaintiff's exhibits 5 and 6) consist entirely of "SNAP TRAIN TRACKS."

The snap trains and tracks were classified as toys, not specially provided for, and assessed with duty at the rate of 35 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, as modified by T.D. 52739, supplemented by T.D. 52820. The toy building blocks were assessed with duty at the rate of 25 per centum ad valorem under the specific provision therefor in paragraph 1513 of the Tariff Act of 1930, as modified by T.D. 51802.

Plaintiff does not dispute the collector's classification of the trains and the building blocks. Its protest is limited to the snap train tracks, which, it is alleged, should be classified under the provision in paragraph 1513, as modified by T.D. 51802, for toy building blocks, valued at more than 8 cents per pound, with a duty assessment of 25 per centum ad valorem.

The snap train tracks in controversy, as disclosed from an examination of the samples, are made of hardwood that has been processed to a smooth, clean finish. Some of the pieces are straight and others are curved. They vary in length from approximately 3½ inches to 8½ inches. All of them have been grooved in such a way as to fit the toy trains included in the sets, heretofore described. Each end of the tracks is fitted with a metal snap that serves as a connecting device in laying the tracks. An advertising circular, or brochure (plaintiff's exhibit 7), describes the merchandise as follows:

The "snap-action" features of the train and the track have been play-tested and found to be exceptionally well preferred by youngsters. Sturdy snaps on tracks and trains make for easy, quick assembling. The "snap-action" creates interest and in itself is intriguing. * * *

NOTE: The "plug-in" part of the snap has purposely been allowed to remain loose on all pieces of tracks and trains. This permits the track sections to be elevated for making bridges, etc. without unsnapping at the joints. On the trains it allows the cars to follow one another around the curves without coming off the track.

A detailed description of the snap tracks in question has been set forth because of the controlling effect of the samples in this case. Samples are potent witnesses. *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995.

Plaintiff's witness—the sole witness to appear herein—stated that she has been engaged in various phases of the field of education since 1934. During the course of her experience, which has extended throughout the United States, she has supervised 13 schools in southern California and has been an educational consultant for the Nursery School Association. At the time of trial of this case, the witness was teaching courses to teachers who were working with young children. Explaining some of the courses she was teaching, the witness testified as follows (R. 7):

One of the courses I teach for UCLA Extension is called "Play and Play Materials." Another course that I teach is called "Methods and Materials in Teaching in the Child Care Centers." Both of these courses have to do with the guidance and selection of toys, and the utilization, the study of how children use toys and equipment, the arrangement in school rooms in general.

The witness' testimony is mostly an explanation of the reaction of children of different ages to toys as playthings. Concerning the use of toys like plaintiff's exhibits 1 to 6, *supra*, the witness stated that "different children of different age levels, different backgrounds and responses use them in different ways." (R. 9.) Referring to her observation of the use of toys, like plaintiff's exhibits 1 to 6, by children of the 2-to-5-year-old group, the witness stated that—

* * * I have seen children build houses, garages, swimming pools in the Valley, they would take some of the pieces. Children utilize them in a variety of ways.

In explaining such use, the witness further stated that—

* * * The children don't always label what they build, but if they do, it doesn't always have a resemblance to what they say it is; but to them it is what they say it is.

Testifying with reference to the snap tracks in question, the witness stated that children of "the youngest level tend to ignore the grooves; the older children utilize them" (R. 19); that a child 2 years of age "would not have the dexterity to use the snap"; and that the "two-year-olds would probably pile them, just one on top of another, or string them out in a length, as long as the blocks would move."

The witness was also interrogated, on direct examination, concerning the illustrations contained in the brochure (exhibit 7, *supra*), showing the snap tracks in use as part of snap train and snap track and block layouts. In connection therewith, the witness stated that the "four and a half-year-old cannot make *this switch arrangement* [part of exhibit 4, *supra*]; this is too difficult for her," that her nieces and nephew, ages 6, 7½, and 11, can make "most" of the arrangements of the sets shown "in the brochure," and that, in certain schools in Los Angeles, the oldest age groups, 4 and 5, "can imagine some of these" arrangements.

Asked whether she considered the snap tracks in controversy to be building blocks, the witness answered as follows (R. 21):

If one were to gather these up and put them in a bag or a box and call them building blocks, they would be used. If they called them something else, they might still be used as building blocks.

The witness identified two pieces, "called ramps," from the "Junior Set," (exhibit 2, *supra*), and two pieces, "called switch plates," from the "Master Set" (exhibit 4, *supra*), and then stated that "They are included *in shapes* of building blocks." [Italics supplied.] (R. 24.)

On cross-examination, the witness testified that snap tracks, such as those under consideration, are *primarily used in snap train and snap track sets by children 5, 6, and 7 years of age.*

The testimony, as hereinabove outlined, cannot be viewed in a light favorable to plaintiff's contention. The witness' statements, suggesting possible or probable uses of these snap tracks as building blocks, have no influence in determining the issue before us. The samples of these snap tracks are positive contradictions of the supposititious uses mentioned by the witness. By design and construction, the articles in question are snap tracks fitted for, and dedicated to, use with snap trains.

The law is well settled "that the classification by the collector and his official acts are presumptively correct" (*McKesson & Robbins, Inc.* v. *United States,* 27 C.C.P.A. (Customs) 157, C.A.D. 77), and it is equally "well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification" (*E. I. du Pont de Nemours & Co.* v. *United States,* 27 C.C.P.A. (Customs) 146, C.A.D. 75).

Plaintiff's evidence, as hereinabove reviewed, is not sufficient to overcome the presumption of correctness attached to the collector's action, as enunciated in the cited authorities, in classifying the snap tracks involved herein as toys, not specially provided for.

Consideration is now directed to *Louis Marx & Co., Inc., et al.* v. *United States,* 40 Cust. Ct. 434, Abstract 61534, the record in which case was incorporated herein on motion by plaintiff and without objection from defendant. In the cited case, the merchandise consisted of so-called "Wooden Educational Blocks" that consisted of light wooden cubes, 1¼ inches square, compactly arranged in a cellophane container. Four sides of each cube had a different letter of the alphabet, and two sides showed the outline and the name of an animal. The blocks were never sold by themselves, but always placed into a toy truck of domestic manufacture, and the two items—blocks and truck—were sold as an entity. The

merchandise was classified as toys, not specially provided for, and was claimed to be properly dutiable under the provision for toy building blocks.

Plaintiff makes no contention that the educational blocks involved in the *Marx* case, *supra*, are the same as, or similar in material respects to, the snap tracks under consideration in this case. Instead, counsel argues for controlling influence of the incorporated case over the present case by referring to three exhibits introduced therein by defendant. Our description of those exhibits in our decision in the *Marx* case is as follows:

\* \* \* The witness produced samples (three) of building or construction blocks (defendant's collective exhibit A). One box, labeled "Snap-N-Play Building Blocks," contains small, colored wood blocks of different shapes, each being filled with a metal snap that facilitates connecting or joining the pieces for the construction of different kinds of toys, such as cars, airplanes, and cannons. Another box is labeled "CONSTRUCTION BLOCKS" and contains wood blocks of different colors and sizes with holes bored at certain places in the sides and ends. With the use of small wood dowels that are included with the set, the different blocks can be joined to create "various types of cars and other objects." (R. 17.) The third sample, making up the collective exhibit, consists of a bag of grooved hardwood blocks in 11 basic shapes, evidently intended for the use of a child capable of building some definite object within the sphere of his imagination. \* \* \*

Claiming similarity between the building blocks described in the foregoing quotation from the *Marx* case, *supra*, and the snap tracks involved in the present case, counsel for plaintiff, in their brief, state as follows:

\* \* \* The articles at bar *do* bear a striking resemblance in many pertinent respects to the building blocks or bricks introduced in evidence in that case as Defendant's Collective Exhibit A. A comparison of the merchandise at issue here with the SNAP-N-PLAY blocks which constituted one part of Defendant's Collective Exhibit A in that case, reveals that both are constructed with snaps, for the purpose of joining the respective pieces in building. The articles at issue here also resemble the Blockraft Self-Aligning Hardwood Blocks in a bag which are part of Defendant's Exhibit A in the *Marx* case, in that both are grooved. [Italics quoted.]

Plaintiff's alleged similarities, between the building blocks that were discussed in the said *Marx* case and the present merchandise, are merely superficial likenesses. The articles in question are snap tracks; they are not building blocks. These snap tracks are equipped with metal snaps and made with grooves of specific width and depth. Both features are essential to the completeness of the snap tracks for their dedicated use with the snap trains included in the imported sets, exhibits 1, 2, 3, and 4, *supra*. The building blocks referred to in the *Marx* case, *supra*, are nothing more than building blocks. One type, the "Snap-N-Play Building Blocks," is fitted with metal snaps, which facilitate the joining of the blocks into shapes or forms of toys illustrated inside the cover of the cardboard container of the set. In the bag of the "Blockraft Self-Aligning Hardwood Blocks," some of the blocks have been made with grooves that permit alignment of the different shapes when they are being assembled in their use by children. The grooves in the said Blockraft Self-Aligning Hardwood Blocks" appear as slight indentations or depressions, which cannot be considered as comparable with the broader and deeper grooves in the snap tracks in controversy. The substantial differences between the building blocks mentioned in the cited case and the snap tracks involved in this case eliminate the former as a consideration in the tariff classification of the latter.

On the basis of the present record and for all of the reasons hereinabove set forth, we hold the snap tracks in question to be dutiable at the rate of 35 per centum ad valorem under the provision in paragraph 1513, as modified, *supra*, for toys, not specially provided for, as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.