(C.D. 2493)

BRUCE DUNCAN CO., INC., A/C SCHOOL FURNITURE IMPORT CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided on rehearing [Abstract 66198] November 16, 1964)

*Stein & Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff* and *Harold L. Grossman*, trial attorneys), for the defendant.

Before OLIVER and WILSON, Judges

OLIVER, Chief Judge: This protest involves boxed sets of wooden toys. A sample of each set is in evidence (plaintiff's exhibits 1 to 6, inclusive). The cover of the box holding the set identifies its contents, not only by naming the articles, but also through a pictorial illustration depicting the use of the merchandise. Three of the sets, characterized as "Beginners Set" (plaintiff's exhibit 1), "Junior Set" (plaintiff's exhibit 2), and "BUILDERS SET" (plaintiff's exhibit 3), consist of "SNAP TRAIN AND TRACKS WITH BUILDING BLOCKS." The so-called "MASTER SET" (plaintiff's exhibit 4), also described as "SNAP TRAIN AND TRACKS," includes "Train, Straight Tracks, Curved Tracks, Switches, Crossing, and Ramps." The remaining two sets (plaintiff's exhibits 5 and 6) consist entirely of "SNAP TRAIN TRACKS."

The snap trains and tracks were classified as toys, not specially provided for, and assessed with duty at the rate of 35 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, as modified by T.D. 52739, supplemented by T.D. 52820. The toy building blocks were assessed with duty at the rate of 25 per centum ad valorem under the specific provision therefor in paragraph 1513 of the Tariff Act of 1930, as modified by T.D. 51802.

Plaintiff does not dispute the collector's classification of the trains and the building blocks. Its protest is limited to the snap train tracks, which, it is alleged, should be classified under the provision in paragraph 1513, as modified by T.D. 51802, for toy building blocks, valued at more than 8 cents per pound, with a duty assessment of 25 per centum ad valorem.

The case was the subject of our decision in *Bruce Duncan Co., Inc., a/c School Furniture Import Co.* v. *United States*, 47 Cust. Ct. 358, Abstract 66198, wherein we sustained the action of the collector and overruled the protest. Plaintiff moved for rehearing to offer additional evidence which was not available at the time of the original presentation of the case. The motion was granted (*Same* v. *Same*, 47 Cust. Ct. 404, Abstract 66312), so the issue is now before us for further consideration.

The snap train tracks in controversy, as disclosed from an examination of the samples, are made of hardwood that has been processed to a smooth, clean finish. Some of the pieces are straight and others are curved. They vary in length from approximately 3½ inches to

8½ inches. All of them have been grooved in such a way as to fit the toy trains included in the sets, heretofore described. Each end of the tracks is fitted with a metal snap that serves as a connecting device in laying the tracks. An advertising circular, or brochure (plaintiff's exhibit 7), describes the merchandise as follows:

The "snap-action" features of the train and the track have been play-tested and found to be exceptionally well preferred by youngsters. Sturdy snaps on tracks and trains make for easy, quick assembling. The "snap-action" creates interest and in itself is intriguing. * * *

Note: The "plug-in" part of the snap has purposely been allowed to remain loose on all pieces of tracks and trains. This permits the track sections to be elevated for making bridges, etc. without unsnapping at the joints. On the trains it allows the cars to follow one another around the curves without coming off the track.

A detailed description of the snap tracks in question has been set forth because of the controlling effect of the samples in this case. Samples are potent witnesses. *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995.

In its original presentation of this case, plaintiff introduced the testimony of one witness, who had been engaged in various phases of the field of education since 1934. To repeat the detail analysis of the witness' testimony, as set forth in our decision, Abstract 66198, *supra*, would unduly lengthen this opinion. It is incorporated herein by reference. The testimony therein was "mostly an explanation of the reaction of children of different ages to toys as playthings," and, in our comment thereon, we stated that "The witness' statements, suggesting possible or probable uses of these snap tracks as building blocks, have no influence in determining the issue before us. The samples of these snap tracks are positive contradictions of the supposititious uses mentioned by the witness. By design and construction, the articles in question are snap tracks fitted for, and dedicated to, use with snap trains."

At the trial on rehearing, plaintiff introduced additional evidence, consisting of the oral testimony of two witnesses and certain exhibits. The executive vice president of an advertising agency stated that his business includes the servicing of toy companies and toy jobbers which involves promotional work in all sorts of toy items, and that, through such experience, he has come in contact with snap tracks, such as the merchandise under consideration. After stating, "I don't know what is building blocks," the witness gave, as his personal opinion, that "anything that is made of wood out of which you can make something is a building block." The witness' testimony, relating to the use of the imported sets as other than tracks and trains, appears in the record as follows (R. 51–52):

A. Well, ever since the inception of the tracks and trains I have seen them used in other ways, because, if I may repeat myself, that a child's imagination

on an item of this type enables him to build things, and that, basically, is what the mother wants when she buys. If he just sits and plays with trains he tires of them, but when he takes them apart and builds things with them that is when the item becomes——

Q. You have personally observed that activity of children?—A. Yes.

Q. Would you describe some of the things you have seen built by children, other than tracks, with the articles which are grooved and have snaps?—A. They will make towers out of them; they will make airplanes out of them. If you know little children you run a gamut of imagination. They can take two ordinary pieces of wood and do all kinds of things with them, anything at all that they can put on top of another. It may not look like a tower, but in their imagination it is a tower.

To consider the above-quoted testimony as favorable to plaintiff's contention, would reduce classification of merchandise as toy building blocks to an absolute absurdity. Chief use is the controlling element in determining whether an article is classifiable as a toy, under the statutory definition of the term in paragraph 1513 of the Tariff Act of 1930. Certainly, plaintiff's testimony, based on a child's imagination, is not a showing of chief use of the present merchandise.

Plaintiff's second witness on rehearing was the importer of the present merchandise. His testimony is largely a discussion of different kinds of toy building blocks. He referred to unit building blocks, "Sta-Put" interlocking blocks, and hollow building blocks. Samples of each are in evidence. Of the assortment of unit building blocks identified by the witness, four straight pieces are fitted with grooves (plaintiff's collective exhibits 12–A, 12–B, 12–C, and 12–D), one straight and plain piece is without any grooves (plaintiff's exhibit 13), another is curved (plaintiff's exhibit 14), and another called "double switch curve" (plaintiff's exhibit 15), is also fitted with grooves. The grooved pieces are made so vehicles can run on them. The so-called "Sta-Put" toy building blocks are not fitted with grooves, but are equipped with a snap that is used as a locking device (plaintiff's exhibit 16). The hollow toy building blocks have holes drilled therein in such a manner that they serve as handgrips. None of the said toy building blocks are products of the witness' company; all of them are produced by Creation Playthings, Inc., distributor of educational toys, whose catalogs (plaintiff's collective exhibit 10 and plaintiff's collective exhibit 11) contain pictorial illustrations showing uses of the various toy building blocks by children.

The toy building blocks, hereinabove referred to, are materially different from the merchandise in question. Here, we are concerned with definite articles, i.e., snap tracks, which are specifically made for exclusive use with the trains, included in the sets, exhibits 1, 2, 3, and 4 *supra*. The witness' comparison of the present merchandise with the said toy building blocks is based on his personal understanding of a

building block as "any plaything which can accomplish more than a single purpose."

The different meanings of the term "building block," stated by each of the witnesses who appeared at the trial on rehearing, are not consistent, and cannot be reconciled, with the definitions set forth in *Louis Marx & Co., Inc., et al.* v. *United States*, 40 Cust. Ct. 434, Abstract 61534, the record in which case was incorporated herein on motion by plaintiff and without objection from defendant.

The *Marx* case involved certain so-called "WOODEN EDUCATIONAL BLOCKS" that consisted of light wooden cubes, 1¼ inches square, compactly arranged in a cellophane container, which had been assessed as toys and claimed to be properly classifiable as toy building blocks. In the course of our decision therein, certain definitions, taken from "The Century Dictionary and Encyclopedia" (1906, volume 1), quoted in plaintiff's brief, were set forth as follows:

block, n. * * * 1. Any solid mass of matter, usually with one or more plane or approximately plane faces: as, a *block* of wood, stone, or ice; sometimes, specifically, a log of wood.

building block, n. * * * 2. One of a set of blocks with which children imitate the construction of buildings.

Giving effect to the cited definitions, we stated as follows:

The significant difference in the foregoing definitions, so far as the present issue is concerned, is in the showing that the word "block" is a generic term to include any solid mass of matter that can be composed of different materials and that the designation "building block" relates to a particular kind or class of blocks, designed for a specific use.

Turning now to a consideration of the *Marx* case, *supra*, it should be noted that plaintiff makes no contention that the educational blocks involved therein are the same as, or similar in material respects to, the snap tracks involved in this case. Instead, counsel argues for controlling influence of the incorporated case over the present case by referring to defendant's evidence introduced therein, and particularly to three exhibits produced by defendant. Our description of those exhibits in our decision in the *Marx* case is as follows:

* * * The witness produced samples (three) of building or construction blocks (defendant's collective exhibit A). One box, labeled "Snap-N-Play Building Blocks," contains small, colored, wood blocks of different shapes, each being fitted with a metal snap that facilitates connecting or joining the pieces for the construction of different kinds of toys, such as cars, airplanes, and cannons. Another box is labeled "CONSTRUCTION BLOCKS" and contains wood blocks of different colors and sizes with holes bored at certain places in the sides and ends. With the use of small wood dowels that are included with the set, the different blocks can be joined to create "various types of cars and other objects." (R. 17.) The third sample, making up the collective exhibit, consists of a bag of grooved hardwood blocks in 11 basic shapes, evidently intended for the use of

a child capable of building some definite object within the sphere of his imagination. * * *

Claiming similarity between the building blocks described in the foregoing quotation from the *Marx* case, and the snap tracks under consideration in the present case, counsel for plaintiff, in a brief, state as follows:

* * * The articles at bar *do* bear a striking resemblance in many pertinent respects to the building blocks or bricks introduced in evidence in that case as Defendant's Collective Exhibit A. A comparison of the merchandise at issue here with the SNAP-N-PLAY blocks which constituted one part of Defendant's Collective Exhibit A in that case, reveals that both are constructed with snaps for the purpose of joining the respective pieces in building. The articles at issue here also resemble the Blockraft Self-Aligning Hardwood Blocks in a bag which are part of Defendant's Exhibit A in the *Marx* case, in that both are grooved. [Italics quoted.]

In our decision in the previous case, Abstract 66198, *supra*, we distinguished between the building blocks discussed in the *Marx* case, and the present merchandise. Since the additional evidence introduced by plaintiff on rehearing offers no reason for disturbing the conclusion reached in our original decision in this case, we repeat here with the same force and effect, what was stated there, as follows:

Plaintiff's alleged similarities, between the building blocks that were discussed in the said *Marx* case and the present merchandise, are merely superficial likenesses. The articles in question are snap tracks; they are not building blocks. These snap tracks are equipped with metal snaps and made with grooves of specific width and depth. Both features are essential to the completeness of the snap tracks for their dedicated use with the snap trains included in the imported sets, exhibits 1, 2, 3, and 4, *supra*. The building blocks referred to in the *Marx* case, *supra*, are nothing more than building blocks. One type, the "Snap-N-Play Building Blocks," is fitted with metal snaps, which facilitate the joining of the blocks into shapes or forms of toys illustrated inside the cover of the cardboard container of the set. In the bag of the "Blockraft Self-Aligning Hardwood Blocks," some of the blocks have been made with grooves that permit alignment of the different shapes when they are being assembled in their use by children. The grooves in the said "Blockraft Self-Aligning Hardwood Blocks" appear as slight indentations or depressions, which cannot be considered as comparable with the broader and deeper grooves in the snap tracks in controversy. The substantial differences between the building blocks mentioned in the cited case and the snap tracks involved in this case eliminate the former as a consideration in the tariff classification of the latter.

On the basis of the combined records before us, and for all of the reasons hereinabove set forth, as well as those stated in our original decision, we adhere to our previous conclusion and hold the snap tracks in question to be dutiable at the rate of 35 per centum ad valorem under the provision in paragraph 1513, as modified, *supra*, for toys, not specially provided for, as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.