(C.D. 4236)

1–2 KANGAROO, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 21, 1971)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom* and *Rufus E. Jarman, Jr.*, of counsel; *Alfred M. Marks*, associate counsel) ; for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Velta A. Melnbrencis*, trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: These six protests consolidated for trial involve the tariff classification of so-called "Playplax" units that were im-

ported from the United Kingdom during the period from December 1967 through November 1968.[1] Playplax units are made of transparent plastic, in various colors, and are approximately one-eighth of an inch thick. They come in two different shapes, namely, Playplax "squares" which measure about two inches in width and depth, and Playplax "rings" which are hollow cylinders about two inches high and two and one-quarter inches in diameter. Each Playplax unit has slots measuring about one-eighth of an inch by one-half of an inch, positioned in such manner that the individual units, whether squares or rings, may be attached together in stable fashion. Most of the Playplax units were imported in packaged sets, some containing squares and rings; some containing only rings; and some containing only squares.

The imports in issue were classified by the government under item 737.90 of the tariff schedules as toys, not specially provided for, and were assessed duty at the rate of 35 percent for the 1967 entries and 31 percent for the 1968 entries. Plaintiff claims that they are properly classifiable under the provision in item 737.55 for "toy building blocks, bricks, and shapes," dutiable at the rate of 21 percent for the 1967 entries and 18.5 percent for the 1968 entries.

The statutory provisions involved are contained in schedule 7, part 5, subpart E of the Tariff Schedules of the United States and read as follows:

Classified under:

> Toys, and parts of toys, not specially pro-
> vided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

| 737.90 | Other | 35% ad val. (in 1967) 31% ad val. (in 1968) |
|---|---|---|

Claimed under:

| 737.55 | Toy alphabet blocks; and toy building blocks, bricks, and shapes | 21% ad val. (in 1967) 18.5% ad val. (in 1968) |
|---|---|---|

The parties agree that the case presents no issue of relative specificity. Thus, if the articles are covered by the language of the claimed provision—item 737.55, then they are specially provided for and item 737.90—the item under which they were classified—does not apply. The parties also agree that the articles in question are "chiefly used for

---

[1] All the entries covered by these protests were liquidated within 60 days from the date of the appraisement. However, since no appeal for reappraisement was filed within the statutory period, the liquidations, in our view, remain valid. *John V. Carr & Son, Inc.* v. *United States,* 66 Cust. Ct. 316, 4209 (1971).

the amusement of children or adults" within the meaning of schedule 7, part 5, subpart E, headnote 2, and, therefore, are "toys" for tariff purposes. Finally, the official papers reflect the fact that some Playplax units have been imported in sets containing only squares, and that such sets have been classified by the government as "toy building blocks, bricks, and shapes" under item 737.55. For that reason, Playplax squares are in issue only when imported in sets that also contain Playplax rings.

At trial only one witness—called by plaintiffs—testified. This witness, who was the owner of plaintiff at the time of the importations here in question, participated in the design of Playplax to some extent; was responsible for introducing the item to the U.S. market; and has seen the merchandise used hundreds of times. His testimony established the following facts: Invoice descriptions and trade designation of the Imported Playplax units vary depending on packaging. For example, a Playplax "Tidy Pack" consists of a set of 36 squares; a "Regular Pack" consists of 48 squares; and a "play box" or "combination box" consists of 48 squares and 24 rings.

Playplax squares and rings come in various colors, such as, red, yellow, blue, green and clear. Individual units may be assembled together by means of the slots. Thus, a square can be interlocked with another square or with a ring. Similarly, a ring can be interlocked with another ring or with a square.

Playplax units are primarily used by children to build things in their own fantasy by putting the different units together in various configurations. There is no finite limitation to the number of structural combinations which may be formed with Playplax units, or the number of pieces which may be attached to form a single structure. The average manual competency age for Playplax is about four years, although some children reach the stage where they can build with Playplax by the age of two and one-half. Usually a child two and one-half years' old or younger would merely examine the material as one would examine a piece of paper and a pencil before knowing how to write. Most children of the age of four "respond to the material," that is, they build with it.

In the witness' observation of the use of Playplax in the home, in schools and in restaurants, he had seen many structures built, most of which were in the abstract although they represented real structures to the children building them. Thus, a structure built by a child to represent a windmill bore no resemblance to a real windmill except to that child. However, other structures objectively represented real structures, such as a replica of the Seagram Building that was built by an eight-year old. In addition, there was introduced in evidence two

preconstructed structures made from Playplax—one an identifiable representation of a castle, the other an abstract configuration.

In this factual setting, plaintiff argues that the imported merchandise consists of toy building units designed and used for construction play by children to build both abstract and objectively recognizable structures; and that, therefore, in terms of use, the import fits squarely within the claimed provision—item 737.55—for "building blocks, bricks, and shapes." Defendant argues, to the contrary, that the legislative history shows that item 737.55 was intended to cover only toy building blocks and bricks, and articles of the same class or kind which have been imported with such blocks or bricks, but are in shapes other than blocks or bricks; that the common meaning of the term "building blocks" refers to a specific class of articles in the form of solid pieces of wood or other combination, usually cubical, which are used for building recognizable objects, such as imitation buildings; and that the testimony and exhibits fail to prove that the importations consist of "building blocks" or toy building shapes. For the reasons that follow, we conclude that the importations fall within the scope of item 737.55, as claimed by plaintiff, and therefore sustain the protests.

In the first place, the record makes it clear that the Playplax units were designed for and chiefly used by children for the building of structures and objects. Indeed, examination of the samples alone offers potent evidence on this question. See e.g., *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36, 40, C.D. 3061 (1967). In short, as plaintiff argues, in terms of use the merchandise falls squarely within the claimed provision—item 737.55—for "building blocks, bricks, and shapes."

This conclusion, it may be added, is supported by case law and legislative history. In this connection, it is to be noted that under the Tariff Act of 1930, as originally enacted, toys other than those composed wholly or in chief value of any product provided for in paragraph 31 (i.e., of cellulose acetate or of compounds, combinations, or mixtures thereof), were covered by the residual provision of paragraph 1513 covering "all other toys, and parts of toys, not specially provided for," at a rate of duty of 70 percent ad valorem. While this provision covered a wide variety of articles, used chiefly for the amusement of children, the principal types were non-mechanical toy trains and automobiles, soldier figures, toy badges, stuffed animal figures, *wood building blocks*, and toy tennis rackets.[2]

In 1938, the United States entered into a Trade Agreement with the United Kingdom (see T.D. 49753) whereby (among other things) the

---

[2] See U.S. Tariff Commission's *Compilation of Data on United States Trade with Germany*, Schedule 15—Sundries, p. 15–5 (1939).

residual clause of paragraph 1513 was modified as follows (effective December 24, 1939, see T.D. 50030) :

> Toys, not specially provided for: * * * and building blocks or bricks, valued at 8 cents or more per pound.[3]

Subsequently, the phrase "building blocks" was interpreted in *Louis Marx & Co., Inc.* v. *United States*, 40 Cust. Ct. 434, Abstract 61534 (1958). Involved in that case were "alphabet blocks" which were light wooden cubes, 1¼ inches square, that contained four letters of the alphabet on four sides and outlines of animals on the other two. The blocks were classified by the government as toys, not specially provided for, under paragraph 1513, as modified. Plaintiffs claimed that the articles were properly classifiable under paragraph 1513 as "building blocks," and thus, as the court put it, the sole question for determination was whether the alphabet blocks were the specific kind of toys contemplated by the provision for "building blocks."

The court sustained the government's classification, finding that the plaintiffs' evidence, not impressive in the first place, was completely overcome by the proof offered by the government, which consisted of oral testimony from two witnesses plus certain illustrative exhibits. These exhibits consisted of the following: A box of "Snap-N-Play Building Blocks" of different shapes, each fitted with a metal snap to facilitate connecting or joining the pieces for construction of different kinds of toys, such as cars, airplanes, and cannons; a box labeled "Construction Blocks" of different colors and sizes with holes bored to facilitate joining with small wood dowels to create various cars and other objects; and a bag of grooved hardwood blocks in 11 basic shapes, "evidently intended for the use of a child capable of building some definite object within the sphere of his imagination." 40 Cust. Ct. at 435.

The two government witnesses agreed that all of the aforementioned articles were properly described as "building blocks." The court, in turn, agreed with the government witnesses and stated "[the alphabet blocks in issue] are totally unlike the building or construction blocks * * * which, by their various shapes and sizes and somewhat peculiar construction, show that they are intended for the amusement of older children capable of putting a collection of the blocks together to create or build some particular object." 40 Cust. Ct. at 436.

Most important in the court's decision seemed to be the following factors: The imports in question were merely simple cubes, all of the same shape, and therefore designed for very young children who would

---

[3] The United States Tariff Commission made the following statement in the *Trade Agreement between the United States and the United Kingdom,* Vol. VIII, Schedule 15, Sundries, p. 15–38 (1938) :
Description and uses
* * * By toy blocks (bricks) is meant toy building blocks most of which are made of hardwood, cardboard, or compositions imitating stone or masonry.

merely grasp, stack and knock the cubes down. Unlike the government's exhibits, the alphabet blocks did not have shapes and sizes specifically designed to build structures and objects.

Further light was shed on the meaning of the statutory phrase "building blocks" in *Bruce Duncan Co., Inc.* v. *United States*, 53 Cust. Ct. 184, C.D. 2493 (1964),[4] *aff'd* 53 CCPA 90, C.A.D. 882 (1966). That case involved so-called "Snap Train Tracks." The classified and claimed provisions were the same as in *Louis Marx*. The "Snap Train Tracks" consisted of straight and curved pieces, varying in length from 3½ to 8½ inches, all grooved so as to accommodate the wheels of toy trains. Each piece was fitted with a metal snap connecting device. There, as in *Louis Marx*, samples of different kinds of blocks, including "Sta-Put" interlocking blocks and hollow blocks, were introduced into evidence as illustrative of toy building blocks. The court agreed that these illustrative exhibits were, in fact, building blocks and referred to them as such. 53 Cust. Ct. at 187. The court found, however, that the snap train tracks in issue were different from the building blocks in that they were dedicated to use with the snap trains included in the sets. The appellate court affirmed on the stated basis that the record established that the imported articles were "conceived and manufactured with grooves and snaps so that the tracks would become an integral part of the train set." 53 CCPA 90, 94, C.A.D. 882 (1966).

In essence, the articles in *Louis Marx* were held not to be building blocks since they were mere cubes capable only of being stacked by very young children and not specifically designed for construction play. The articles in *Bruce Duncan* were held not to be building blocks because they were dedicated to use as toy train tracks. However, none of the objections to building-block classification which were noted in *Louis Marx* and *Bruce Duncan* are encountered in the present case.

Unlike the alphabet blocks in *Louis Marx*, Playplax squares and rings are not intended for young children merely to stack, grasp and knock down. To the contrary, the testimony of the witness corroborates the exhibits in establishing that Playplax units are designed for the building of structures and objects and that this is exactly what both children and adults do with them. By the age of four, almost every child is naturally motivated by Playplax to build. He does not have to be told to build for he naturally "responds to the material." As with many of the articles considered by the court to be building blocks in *Louis Marx* and *Bruce Duncan*, Playplax has a feature specifically designed for attaching individual pieces together in a stable fashion.

---

[4] This was the second decision by the trial court in that case. In *Bruce Duncan Co., Inc.* v. *United States*, 47 Cust. Ct. 358, Abstract 66198 (1961), the court sustained the classification of the collector and overruled the protest. Plaintiff's motion for rehearing was granted (47 Cust. 404, Abstract 66312 (1961)), and additional testimony was presented.

Thus, each Playplax unit was specifically designed to fit together with any other Playplax unit. Also, the record shows that Playplax units are capable of being combined in any number of simple or complicated forms or constructions, not merely stacks as in the case of alphabet blocks. In addition, Playplax units are not dedicated or subordinated to any use other than the building of structures or objects. As the witness testified: "Playplax is basically material with which a child can build something * * *."

Nor is it relevant that objects built with Playplax may be abstract or representational. For one thing, the record shows that the material is versatile enough for either type of object. For another, it is to be noted that in *Louis Marx* one of the government's witnesses, in describing the use of certain of the exhibits which the court considered to be building blocks, stated that children would "create items that their imagination might dictate, even though they might not be recognizable to an adult." 40 Cust. Ct. at 436. Similar testimony was offered here regarding Playplax.

Further, to be classifiable as a "building block," it is not necessary that the article be cubical in shape. For example, some of the "building blocks" in the *Louis Marx* case (40 Cust. Ct. at 436) came in 11 basic shapes. Indeed, defendant itself points out that "building 'blocks' do not come only in blocks or bricks but also in many other shapes, such as triangles, double triangles, curves, half-curves, circles, half-arches, Y-switches, double switches, half-circles, etc." (Brief, p. 6) We note, too, that the practice of the Bureau of Customs has been to classify Playplax squares, when imported alone, under the claimed provision— item 737.55—notwithstanding they are not cubical in configuration. This practice by the agency entrusted with responsibility for administration of the tariff schedules is, of course, entitled to weight in the interpretation of item 737.55. See e.g., *Mattel, Inc.* v. *United States*, 65 Cust. Ct. 616, C.D. 4147 (1970), note 4.[5] Lastly, the Playplax rings are not precluded from classification as "building blocks" merely because they are hollow. This was recognized as early as 1938 by the Tariff Commission when it pointed out that some toy blocks were made of "cardboard"—and hence scarcely solid. See note 3, *supra*. Also, in *Bruce Duncan*, the court (as previously set out) agreed that certain hollow blocks introduced in evidence for illustrative purposes were, in fact, building blocks and referred to them as such. 53 Cust. Ct. at 187.

From what has been said, we must conclude that under the reasoning of the *Louis Marx* and *Bruce Duncan* cases, Playplax units are "building blocks" within the meaning of item 737.55. For "their various shapes and sizes and somewhat peculiar construction, show that they

---

[5] This practice by the Bureau of classifying Playplax squares, when imported alone, under item 737.55 would indicate also that in the Bureau's view it is quite immaterial that the particular objects constructed with such units are abscract or objectively identifiable.

are intended for the amusement of * * * children capable of putting a collection of the * * * [units] together to create or build some particular object." *Louis Marx*, 40 Cust. Ct. at 436.

But even assuming *arguendo* that Playplax units viewed alone are not "building blocks," they would still fall within the purview of item 737.55 as toy building "shapes." In enacting the present tariff schedules, Congress expanded the relevant provision to remove value from consideration and include not only building blocks and bricks but also "alphabet blocks" and "toy building shapes." The present statutory language ("toy alphabet blocks; and toy building blocks, bricks, and shapes") was drafted by the Tariff Commission and enacted by Congress as item 737.55 of the Tariff Schedules of the United States. The Tariff Commission explained its purpose in broadening the provision in the *Tariff Classification Study*, Schedule 7, page 294, as follows:

> Item 737.55 provides for toy alphabet blocks and for toy building blocks, bricks, and shapes, at the rate of 21 percent ad valorem. The existing tariff has, as a result of a trade-agreement concession, a separate rate provision for building blocks or bricks valued at 8 cents or more per pound which are now dutiable at the rate of 21 percent ad valorem. So-called "alphabet blocks", however, are dutiable in the "basket" toy provision at the rate of 35 percent ad valorem, as are building blocks valued at less than 8 cents per pound. Because there is frequently no significant difference between some toy "alphabet" blocks and toy "building" blocks, and *because there exists some doubt about the tariff classification of construction units in shapes other than "blocks" or "bricks" which frequently are imported with toy building blocks, item 737.55 was created to cover all of these articles at a single rate of duty.* Imports of alphabet blocks and the low-priced building blocks on which the duty is being changed are believed to be small, and the change in duty is not expected to affect the volume of imports. [Emphasis added.]

It would appear that in adding the phrase "and shapes" to the existing provision for building "blocks" and "bricks," Congress perceived that toy building units identical to building blocks in terms of use might conceivably be disqualified from the intended favorable classification if not in the cubical shape of a block or brick. It would also appear that the exact definition of the shape of a block or brick could be a troublesome legal issue leading to unnecessary litigation. In any event, whatever the reason, Congress specifically included toy building "shapes" in the new provision.[6] And in this connection, it is axiomatic that all language contained in a statute is to be given full force and effect. The "courts must not impute to a legislative body

---

[6] As previously indicated, the *Tariff Classification Study* observed that item 737.55 was enacted because "there exists some doubt about the tariff classification of construction units in shapes other than "blocks" or "bricks" *which frequently are imported with toy building blocks* * * *." [Emphasis added.] This, in our view, indicates that construction units in shapes other than "blocks" or "bricks" are frequently imported with toy building blocks; it does not mean that it is a *sine qua non* for classification as a "shape" that a construction unit be imported with toy building blocks.

the doing of a useless and vain thing unless the written words will not permit of a construction which will give them a different effect." *Parfums d'Orsay (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 104, 107, T.D. 40028 (1924). The point is that since in enacting the Tariff Schedules of the United States Congress added the additional phrase "and shapes" to the existing provision for building "blocks" and "bricks," the only reasonable interpretation is that Congress intended to include additional merchandise—such as that before us here—under the new enactment.[7]

The protests are sustained. Judgment will be entered accordingly.

(C.D. 4237)

---

[7] An additional consideration deserving comment is that the Bureau of Customs (as previously discussed) classified Playplax squares, when imported alone, under item 737.55. Assuming that such squares are not "building blocks," then obviously the Bureau considered them to be "shapes" within the purview of item 737.55. Consistent with this administrative practice of the Bureau—which is entitled to interpretative weight—no reason is apparent as to why Playplax rings, both alone and in combination with squares, are not similarly classifiable as "shapes."